**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PARK CONSULTING GROUP, a Michigan limited liability company, and PW MI CANRE MARENGO, LLC, a Michigan limited liability company,

                Plaintiffs,

v

MARENGO TOWNSHIP, a Michigan civil township,

                Defendant.

Case No. 1:22-cv-00321

HON. HALA Y. JARBOU

---

Ethan R. Holtz (P71884)
Salvatore A. Amodeo (P80290)
*Jaffe, Raitt, Heuer & Weiss, P.C.*
Attorneys for Plaintiffs
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
eholtz@jaffelaw.com
samodeo@jaffelaw.com

Shaina R. Reed (P74740)
Christopher S. Patterson (P74350)
Matthew A. Kuschel (P76679)
Fahey Schultz Burzych Rhodes PLC
Attorneys for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100
cpatterson@fsbralw.com
sreed@fsbrlaw.com
mkuschel@fsbrlaw.com

Thomas R. Meagher (P32959)
Daniel S. Zick (P77950)
Foster, Swift, Collins & Smith, P.C.
Attorneys for Defendant
313 S. Washington Square
Lansing, MI 48933
(517) 371-8100
tmeagher@fosterswift.com
dzick@fosterswift.com

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR EXPEDITED HEARING PURSUANT TO FED. R. CIV. P. 57**

**\*\*ORAL ARGUMENT REQUESTED\*\***

## INTRODUCTION

On April 5, 2022, Plaintiffs filed a 322 paragraph Complaint, containing 22 exhibits. ECF No. 8. Consistent with Defendant's duty to avoid unnecessary expenses, Defendant agreed to waive service of summons pursuant to Fed. R. Civ. P. 12, thereby allowing Defendant 60 days from April 5, 2022 to file its Answer and Affirmative Defenses. ECF No. 9.

On April 7, 2022, Plaintiffs filed a Motion for Expedited Hearing Pursuant to Fed. R. Civ. P. 57. ECF No. 10 (hereinafter "Motion"). Plaintiffs move this Court "for a declaratory judgment that Plaintiffs' greenhouse is exempt from and not required to submit to the Defendant Marengo Township's (the "Township") administrative process because it is a "grandfathered,"[1] agricultural structure that is exempt from the Michigan Building Code and thus does not require building permits and/or a certificate of occupancy." ECF No. 10, PageID.343-44.

For the reasons stated below, Plaintiffs are not entitled to the declaratory relief they seek, and particularly not on an expedited basis. Plaintiffs received each permit for which they applied, but have refused to apply for a building permit.[2] Defendant has not yet had the opportunity to file its Answer or Affirmative Defenses to Plaintiffs' voluminous Complaint; its Answer is not due until June 3, 2022. Plaintiffs have failed to comply with Michigan regulatory requirements, and to exhaust their administrative remedies. Further, this Court should abstain from exercising

---

[1] Plaintiffs' use of the term "grandfathered" suggests a prior, legal nonconforming use. Prior nonconforming uses are vested rights in use of a particular property that do not conform to zoning restrictions, but are protected because they legally existed before a zoning regulation's effective date. *Heath Twp v. Sall*, 442 Mich. 434; 502 N.W.2d 627 (1993). Nonconforming uses that are discontinued for six consecutive months are abandoned. Marengo Twp Zoning Ordinance § 7.02(B), **Exhibit A**; see *Dusdal v. City of Warren*, 387 Mich. 354; 196 N.W.2d 778 (1972). Here, Plaintiffs admit that the Greenhouse "ceased operations…on or about November 2019." ECF No. 10, PageID.350. Any argument that the Greenhouse is a lawful nonconforming use is meritless.

[2] A timeline summarizing Marengo Township's prompt response to each of Plaintiffs' applications is attached as **Exhibit B**.

jurisdiction over Plaintiffs' Complaint based upon the *Burford* abstention doctrine as articulated in *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Defendant respectfully requests that this Honorable Court deny Plaintiffs' Motion.

## COUNTERSTATEMENT OF FACTS

Plaintiffs seek to grow marihuana in a greenhouse ("Greenhouse") situated within Marengo Township at 22695 J. Drive North, Marshall, Michigan 49068 ("Property"). The underlying zoning of the Property is agricultural with additional land uses available in the Marihuana Overlay District. The Greenhouse has been used to grow red peppers, an undisputed agricultural use, since its construction in 2013. However, the building is currently vacant and has not engaged in any agricultural use or cultivation since November 2019, at latest (See ECF No. 10, PageID.350; ECF No. 8, PageID.180, ¶ 69).

Park Consulting Group was aware of the Township's application process on or about May 12, 2021 (**Exhibit C**, Park Timeline, 5/12/21). They anticipated approval for their operating permits in November 2021 (*Id.*). They first applied for a Marihuana Class C Grower Permit on July 23, 2021 (**Exhibit D**, Application cover pages, 7/23/21). In August 2021, the Township advised Plaintiffs of deficiencies in their application (**Exhibit E**, Redacted Correspondence, 8/30/21). The deficiencies in the application were provided before the September 3, 2021 transfer of the Property to Plaintiffs (See ECF No. 10, PageID.350, Attachment 7). Plaintiffs then applied for additional medical and adult-use grower and processor permits on September 17, 2021 (**Exhibit F**, Application cover pages, 9/17/21).

Keeping Plaintiffs' application on an expedited track, the Township scheduled a public hearing on the required special use permit within the Marihuana Overlay District for September 22, 2021. Plaintiffs filed their Special Use Permit ("SUP") with their additional local permit

3

application on September 17, 2021 (**Exhibit G**, SUP application, 9/17/21). Pursuant to the Township's Zoning Ordinance and stated on Section III(E) of the SUP Application, a site plan was required (*Id.*). At 5:50 p.m. on September 22, 2021, the night of the public hearing on Plaintiffs' special use application, Plaintiffs responded to the application deficiencies identified by the Township in August (**Exhibit H**, Redacted Applicant Correspondence, 9/22/21). Plaintiffs submitted additional application and zoning material on October 18, 2021 for consideration by the Planning Commission (**Exhibit I**, Redacted Applicant Correspondence, 10/18/21).

The Planning Commission recommended that the Township Board grant conditional use permits for the Grower Facilities and Establishments. (**Exhibit J**, Township Minutes, 10/26/21). The Township Board accepted the recommendations of the Planning Commission and issued the Conditional Use Permits in the Marihuana Overlay District (*Id.*). The Township issued Plaintiffs nine medical Grower permits and nine Recreational Permits as Plaintiffs requested (*Id.*). Within three months from the date of their initial application, Plaintiffs received conditional use permit zoning approvals and local operating Permits (*Id.*).

Following issuance of the zoning approval in the Marihuana Overlay District and the issuance of local medical and recreational Permits in October 2021, Plaintiffs submitted their detailed Site Plan for approval in November 2021 (**Exhibit K**, Site Plan, 11/19/21). Following review, the Planning Commission recommended approval of the site plan with which the Township Board concurred at its January 2022 meeting (**Exhibit L**, Minutes, 1/25/22). Sheet 2 of the Plaintiffs' detailed site plan identifies the "Greenhouse Area" of over 522,000 square feet as a Low-Hazard Industrial F-2 Occupancy Group (**Exhibit K**, Site Plan, 11/19/21).

In summary, Defendant agrees that Plaintiffs have received approval for every permit or approval for which they applied, including: Class C Grower Permits under the Michigan

Marihuana Facilities Licensing Act and Michigan Regulation and Taxation of Marihuana Act, a Conditional Use Permit under Marengo Township Zoning Ordinance, and Site Plan approval from the Marengo Township Board.

However, Plaintiffs have refused to apply for, and accordingly have not received, building permits or other required construction related permits for modifications to the Greenhouse, or a certificate of occupancy as required under the Michigan Building Code and by the Marijuana Regulatory Agency.

On January 11, 2022, Marengo Township's Building Official, Joseph Israel, appeared at Plaintiffs' Property on or about for a pending permit field inspection. (**Exhibit M**, Field Inspection Slip, 1/11/22). Mr. Israel informed Plaintiffs that since the Greenhouse was no longer growing red peppers and instead growing marihuana, permits and plans for building, electrical, mechanical, plumbing, and fire suppression would be required prior to the issuance of a certificate of occupancy ("CO") (*Id.*).

Plaintiffs did not apply for a building permit but several months later on Friday, February 18, 2022, requested that the Township Supervisor sign a full-page letter stating—among other things—that the Greenhouse did not need a CO (**Exhibit N**, Letter, 2/16/22). Plaintiffs then sought an "urgent phone call" regarding the letter (**Exhibit O**, Rosman email, 2/18/22). The Township Supervisor participated in several calls throughout the day (**Exhibit P**, Lesser email, 2/21/22). Following the calls, Plaintiffs prepared a shorter letter repeating their request but acknowledging the Township's authority to enforce the building code (**Exhibit Q**, Two-page letter). After the Township declined to ratify Plaintiffs' position that the Greenhouse did not need a certificate of occupancy, Plaintiffs agreed to submit a building permit and file an appeal with the Construction Board of Appeals.

Ultimately, Plaintiffs refused to submit a building permit or appeal to the Construction Board of Appeals, instead allowing another month to pass before submitting a "second opinion" according to "custom and practice" (See ECF No. 8, PageID.186, ¶ 119). No such "custom and practice" alleviated Plaintiffs' obligation to comply with applicable law (See ECF No. 8, PageID.187, ¶ 123). Four months after filing their site plan with the Township, without ever requesting a building permit or certificate of occupancy, Plaintiffs commenced this action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 57 provides that: "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201....the court may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57. District Courts interpreting this Rule have held that a speedy hearing is appropriate when it will "terminate the controversy or at least substantially narrow the issues." *GBX Associates, LLC v. United States of America*, 2022 WL 1016218 (N.D. Ohio, April 5, 2022), citing *Allergan, Inc. v. Valeant Pharmaceuticals Intern., Inc.*, 2014 WL 418457 (C.D. Cal. Aug. 21, 2014). Courts have found that expedited proceedings are "especially warranted where there are imminent or ongoing violations of important rights" or the plaintiff "otherwise shows the need for urgency." *Id.* citing *County of Butler*, 2020 WL 2769105 at *2 (W.D. Pa. May 28, 2020). District Courts have broad discretion in deciding whether expedited proceedings are warranted. *GBX* at *3, citing *County of Butler* at *2.

## LEGAL ANALYSIS

I.     **PLAINTIFFS' OWN DELAYS ARE NOT AN EMERGENCY FOR THIS COURT.**

The Township issued a local operating permit, zoning compliance, and site plan approval for the Property. Despite several calls between the parties—including advising the Township it

6

should expect both a building permit application and an appeal to the Construction Board of Appeals—Plaintiffs further delayed, sought special treatment, and ultimately filed suit when the Township insisted that Plaintiffs comply with applicable law. Plaintiffs had months to file for the required permit and/or seek administrative remedies before resorting to litigation but elected to waste additional months trying to circumvent statutory and regulatory requirements. In short, Plaintiffs' request for expedited relief arises only from a situation of Plaintiffs' own making.

Plaintiffs first applied for a Permit to operate a marihuana Grower at the end of July 2021. In August 2021, the Township reviewed the application and identified deficiencies. To assist Plaintiffs, the Township scheduled a public hearing for September 22 before any supplemental response had been provided. On September 17, Plaintiffs applied for additional permits. At 5:50 p.m. on the night of the public hearing, Plaintiffs provided a response and supplemental material for consideration at that hearing. Still, the Township held the hearing and advanced the application to the extent possible, setting the matter for further discussion at its meeting the next month. In October, the Township considered the supplemental material and the Planning Commission recommended granting approval, which the Township Board did at its regularly scheduled meeting. In short, Plaintiffs sought and were granted local operating and zoning approval in the Marihuana Overlay District in three short months.

After securing final approvals for operation, Plaintiffs then filed a detailed site plan for approval of their building operation. Since marihuana operations are a conditional use under the Township ordinances, the Zoning Ordinance requires review and approval by the building inspector of the new use (Exhibit A, Zoning Ordinance § 2.06). Their own site plan identified the "Greenhouse Area" as a new use, specifically a Low-Hazard Industrial F-2 Occupancy Group. Submitted in November 2021, the site plan was provided the month after operating approval was

granted. For reasons unknown, Plaintiffs then began attempting to disclaim the occupancy group they themselves selected.

Four months after submitting their site plan, Plaintiffs then struck upon the novel idea that heavily regulated and psychoactive marihuana is a "plant" just as peppers are a "plant," and therefore no building permits or certificate of occupancy are required. ECF No. 10, PageID.349. Plaintiffs are mistaken. Despite Mr. Israel's explanation, Plaintiffs refused to avail themselves of such permits under the Michigan Building Code, Michigan Property Maintenance Code, or the Michigan Energy Code.

Instead, Plaintiffs insisted that Marengo Township Supervisor David Fountain sign a full-page letter purporting to relieve Plaintiffs of any obligation to comply with the Michigan Building Code or the Single State Construction Act. Plaintiffs mischaracterize this request as "a simple two-sentence acknowledgement from the Township confirming facts that everyone knew and nobody disputes…." (ECF No. 10, PageID.349). Mr. Fountain does not have authority to unilaterally relieve an applicant of its obligations under Michigan state and local law, and properly refused to sign a letter indicating otherwise.

Further, in their attempts to gain preferential treatment, Plaintiffs did not disclose the use of the Property for Marihuana and did not include disclosures required by the Township. For example, when working with Plaintiffs to determine if there were any letters the Supervisor could sign, the Township required that any such letter state that the Township did not waive its authority to enforce the building or other construction codes at the property. However, when presenting the "two-sentence acknowledgement" to the state marihuana regulator, Plaintiffs conveniently omitted this language (**Exhibit R**, MAK Email to opposing counsel). Plaintiffs contended that this glaring omission was unintentional (**Exhibit S**, Ethan response).

8

The Township consistently worked with Plaintiffs on an expedited basis even when evaluating whether some creative alternative to the building code was viable. Determining that the same requirements applied to Plaintiffs that apply to all other marihuana Growers in the Township is not exceptional. It is axiomatic that an applicant must apply for an approval to receive the same. Ultimately, Plaintiffs current lack of building approval arises from their own deliberate choices beginning in November 2021.

## II.   PLAINTIFFS HAVE FAILED TO COMPLY WITH APPLICABLE MICHIGAN STATE REQUIREMENTS.

The Marijuana Regulatory Agency is specifically empowered to promulgate rules and regulations for the Michigan marihuana industry. MCL 333.27206 (medical); MCL 333.27958 (recreational). These regulations focus on public safety and security and include the application of the building and other construction codes to marihuana structures. *Id.* The promulgated rules require marihuana facilities and establishments to comply with the applicable Michigan construction codes. **Michigan's Marihuana Regulations Specifically Require a Building Permit to Cultivate Marihuana.**

Rule 420.206(1) of the Michigan Administrative Code provides that:

A cultivator **shall not** operate a marihuana business unless either of the following conditions is met:

(a) The cultivator operations are within a building that **meets the security requirements** and **passes the inspections** in these rules **and has a building permit pursuant to R 420.208** and these rules.

(b) The cultivator operations are within a building, except that cultivation may occur in an outdoor area, if **all** of the following conditions are met:

  i. The outdoor area containing the cultivation of marihuana plants is contiguous with the building, fully enclosed by fences or barriers that ensure that the plants are not visible from a public place without the use of binoculars, aircraft, or other optical aids, and the fences are secured

9

        and comply with the applicable security measures in these rules, including, but not limited to, locked entries only accessible to authorized persons or emergency personnel.

    ii.    After the marihuana is harvested, all drying, trimming, curing, or packing of marihuana occurs inside the building meeting all the requirements under these rules.

    iii.    The building **meets the security requirements** and **passes the inspections in these rules** and has a **building permit pursuant to R 420.208** and these rules.

Mich. Admin. Code, R 420.206 (emphasis added).

This rule applies directly to growers under Michigan's regulatory scheme. It is not a general rule applicable to all licenses. Therefore, there is no argument that a building permit is only required of safety compliance facilities or marihuana retailers because of their heightened public safety interests. Rather, the rule is explicitly focused on marihuana grower applicants like Plaintiffs. The rule explicitly requires a grower like Plaintiffs who operate "within a building" to have "a building permit." Mich. Admin. Code, R 420.206(1).

All cultivators of marihuana are required to comply with either R 420.206(1)(a) or (b), there is no explicit exception contemplated for a greenhouse, and no legal authority to infer any such exception exists. Plaintiffs' Motion does not refer to or acknowledge this Rule, yet this Rule is a mandatory part of the administrative framework governing marihuana cultivation in Michigan.

### A. Michigan Administrative Code Requires a Certificate of Occupancy to Cultivate Marihuana.

Rule 420.208 of the Michigan Administrative Code governs building and fire safety of applicants' proposed marihuana business. "An applicant's proposed marihuana business and a licensee's marihuana business are subject to inspection by a state building code official, state fire

10

official, or code enforcement official to confirm that no health or safety concerns are present."

Mich. Admin. Code, R 420.208(1).

> A **state building code official**, or his or her authorized designee, may **conduct prelicensure** and post-licensure inspections **to ensure that applicants** and licensees **comply with the Stille-DeRossett-Hale single state construction code act**, 1972 PA 230, MCL 125.1501 to 125.1531; the skilled trades regulation act, 2016 PA 407, MCL 339.5101 to 339.6133; 1967 PA 227, MCL 408.801 to 408.824; and 1976 PA 333, MCL 338.2151 to 338.2160. [Mich. Admin. Code, R 420.208(2) (emphasis supplied).]
>
> An applicant or licensee **shall not operate a marihuana business unless a permanent certificate of occupancy has been issued by the appropriate enforcing agency.** A temporary certificate of occupancy may be accepted, at the discretion of the agency. Before the certificate of occupancy is issued, work must be completed in accordance with the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531. An applicant or licensee **shall comply with both** of the following:
>
> (a) An applicant or licensee **shall obtain a building permit for any building utilized as a proposed marihuana business** or marihuana business as provided in the acts and these rules. The issuance, enforcement, and inspection of building permits under the acts remains with the governmental entity having jurisdiction under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531.
>
> (b) An applicant or licensee **shall obtain a building permit** for a change of occupancy **for an existing building to be utilized as a proposed marihuana business** or marihuana business as provided in the acts and these rules.

Mich. Admin. Code, R 420.208(3) (emphasis added).

Here, Plaintiffs seek to operate a marihuana business without a permanent or temporary certificate of occupancy, contrary to the Administrative Rules. Plaintiffs sought to circumvent the plain language of the Administrative Rules in seeking a signature from Township Supervisor Fountain purporting to ratify Plaintiffs' baseless theory that growth of any plant (even marihuana) in a greenhouse constitutes an agricultural use to present to the Michigan Marihuana Regulatory Agency in lieu of building permits or a certificate of occupancy. ECF No. 10, PageID.352. Supervisor Fountain did not oblige.

Without any legal basis, Plaintiffs seek to avoid the application of the Administrative Rules by arguing that "[s]ince the Greenhouse is an agricultural structure, exempt from the MBC [Michigan Building Code], it is also exempt from the jurisdiction of the CBA [Construction Board of Appeals]." ECF No. 10, PageID.349. The plain language of the Administrative Rules makes clear that marihuana cultivators must have building permits and must obtain certificates of occupancy. Plaintiffs have done neither.

### III.   PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiffs argue that marihuana cultivation within a greenhouse is exempt from the Michigan Building Code because the Greenhouse is an agricultural structure. ECF No. 10, PageID.349. To the extent that Plaintiffs believe that a provision of the Michigan Building Code does not apply, or that the Michigan Building Code has been incorrectly interpreted by the Township Building Official, all applicable law compels Plaintiffs to appeal to the local Construction Board of Appeals.

The Michigan regulations clearly vest the Construction Board of Appeals with jurisdiction to determine whether or not the code is applicable in the first instance.

> An interested person may appeal a decision of the enforcing agency to the board of appeals in accordance with this act. An application for appeal shall be based on a claim that the true intent of the code of the rules governing construction have been **incorrectly interpreted**, the **provisions of the code do not apply**, or an equal or better form of construction is proposed. The decision of a local board of appeals may be appealed to the construction code commission in accordance with the act and time frames. [Mich. Admin. Code, R 408.30414 (emphasis supplied).]

"If an enforcing agency refuses to grant an application for a building permit, or if the enforcing agency makes any other decision pursuant or related to this act, or the [construction] code, an interested person, or the person's authorized agent, may appeal in writing to the [construction] board of appeals." MCL 125.1514(1). "The [construction] board of appeals shall

12

hear the appeal and render and file its decision with a statement of reasons for the decision with the enforcing agency from whom the appeal was taken not more than 30 days after submission of the appeal." *Id.*

Thus, had Plaintiffs applied for a building permit and certificate of occupancy, been denied the same, then appealed that denial to the Michigan Construction Board of Appeals, Plaintiffs would have received a ruling within 30 days of submission of that appeal. For months, Plaintiffs knew the Township's position, consistent with Michigan law, that a building permit and certificate of occupancy were necessary but took no action. See ECF No. 10, PageID.351-352. The time crunch and financial losses Plaintiffs now complain of is the sole result of Plaintiffs' failure to avail themselves of the proper procedure for regulatory approval. The path to compliance was plainly laid out to Plaintiffs, who simply refused to walk it.

Plaintiffs cite to *Huggett v. Department of Natural Resources*, 232 Mich. App. 188, 191-93 (1998) for the proposition that "when a plaintiff is exempt from the application of statutory authority providing for an administrative process, a plaintiff should not be forced to submit to it." ECF No. 10, PageID.349. *Huggett* is readily distinguishable from the facts herein. *Huggett* involved the construction of a cranberry farm within a wetland area, not a marihuana operation within a greenhouse. The construction contemplated in *Huggett* was confined to building dikes, digging ditches, and constructing a reservoir in and around a wetland. *Huggett*, 232 Mich. App. at 190-91. The *Huggett* plaintiffs sought, and were denied, a wetland permit from defendant Department of Natural Resources. *Id.* The Michigan Court of Appeals agreed that *Huggett* plaintiffs, pursuant to MCL 324.30305(2)(e), were entitled to a "farming exemption" to the general prohibition of construction in a wetland to construct a cranberry farm and were therefore not obligated to first exhaust administrative remedies. *Huggett* at 193-94.

13

Cranberries (and red peppers) are commonly understood to be agriculture. Marihuana, conversely, is a highly regulated psychoactive substance that remains a Schedule 1 substance under the Controlled Substances Act. 21 U.S.C. § 812(b). No "greenhouse exemption" exists under any applicable Michigan law that would remove the cultivation of marihuana from the regulatory framework carefully crafted by the Michigan Legislature and Michigan's Marijuana Regulatory Agency. Though Plaintiffs seek to circumvent the application of the Michigan Building Code and Michigan Administrative Rules by arguing a greenhouse exemption applies, no such exemption exists. All marihuana cultivators are subject to the rules set forth above, and for good reason.

### IV. THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER PLAINTIFFS' COMPLAINT UNDER THE *BURFORD* ABSTENTION DOCTRINE.

Where "timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: 1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or 2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, (1989), citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Both considerations are implicated by this litigation.

Here, this Court must construe and apply all the following Michigan statutes, regulations, and codes to issue Plaintiffs the declaratory relief they seek, that a greenhouse cultivating marihuana is exempt from certain Michigan regulations: 1) Michigan Marihuana Facilities Licensing Act, MCL 333.27101 *et seq.*; 2) Michigan Regulation and Taxation of Marihuana Act,

14

MCL 333.27951 *et seq.*; 3) Stille-Derossett-Hale Single State Construction Code Act, MCL 125.1501 *et seq.*; 4) the Michigan Building Code; and 5) the Michigan Administrative Code. Meanwhile, marihuana remains a Schedule I controlled substance under 21 U.S.C. § 812.

Marihuana regulation within Michigan is a substantial public concern to the state of Michigan, and resolution of the legal issue as presented by Plaintiffs poses difficult questions of Michigan law bearing on policy problems of substantial public import to Michigan, that transcends the question presented by Plaintiffs. To the extent this Court rules in Plaintiffs' favor, marihuana cultivators are plainly incentivized to move their operations to greenhouses, which would then be exempted from substantial regulatory oversight by Michigan state and local agencies. This Court should abstain from ruling on a matter that would disrupt Michigan state efforts to establish coherent policy regarding marihuana regulation within its borders. But if this Court chooses not to abstain, it should not rush its analysis as requested by Plaintiffs. Instead, any review must be deliberate, methodical, and unhurried, given the complexity of the issue presented.

## CONCLUSION

Defendant respectfully requests that this Court deny Plaintiffs' Motion for Expedited Hearing for the reasons that: 1) Plaintiffs have failed to comply with Michigan statutory and regulatory requirements; 2) Plaintiffs have failed to exhaust administrative remedies; 3) and abstention from exercising jurisdiction over Plaintiffs' Complaint is necessitated under the *Burford* Doctrine and grant such further relief as it deems equitable under the circumstances.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | *Fahey Schultz Burzych Rhodes PLC*<br>Attorneys for Defendant |
|  |  |
|  | _____<br>Shaina R. Reed (P74740)<br>Christopher S. Patterson (P74350)<br>Matthew A. Kuschel (P76679)<br>4151 Okemos Road<br>Okemos, MI 48864<br>(517) 381-0100<br>cpatterson@fsbralaw.com<br>sreed@fsbrlaw.com<br>mkuschel@fsbrlaw.com |
|  |  |
|  | Respectfully submitted, |
|  |  |
|  | FOSTER, SWIFT, COLLINS & SMITH, P.C.<br>Attorneys for Defendant |
|  |  |
| Dated: April 25, 2022 | /s/ Daniel S. Zick _____<br>Thomas R. Meagher (P32959)<br>Daniel S. Zick (P77950)<br>313 S. Washington Square<br>Lansing, MI 48933<br>(517) 371-8100<br>tmeagher@fosterswift.com<br>dzick@fosterswift.com |

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the requirements of L.R. 7.3(b)(ii), as it contains 4,230 words, excluding the portions of the brief exempted by L.R. 7.3(b)(i). This word count was generated using Microsoft Word 2010.

                                         Respectfully submitted,

                                         FOSTER, SWIFT, COLLINS & SMITH, P.C.
                                         Attorneys for Defendant

                                         /s/ Daniel S. Zick
                                         Thomas R. Meagher (P32959)
                                         Daniel S. Zick (P77950)
                                         313 S. Washington Square
                                         Lansing, MI 48933
                                         (517) 371-8100
Dated: April 25, 2022                    tmeagher@fosterswift.com
                                         dzick@fosterswift.com

14107:00402:6280823-1