# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PARK CONSULTING GROUP, a Michigan limited liability company, and PW MI CANRE MARENGO, LLC, a Michigan limited liability company,

                Plaintiffs,

v

MARENGO TOWNSHIP, a Michigan civil township,

                Defendant.

Case No. 1:22-cv-00321

HON. HALA Y. JARBOU

_____/

| | |
|---|---|
| Ethan R. Holtz (P71884) | Shaina R. Reed (P74740) |
| Salvatore A. Amodeo (P80290) | Christopher S. Patterson (P74350) |
| *Jaffe, Raitt, Heuer & Weiss, P.C.* | Matthew A. Kuschel (P76679) |
| Attorneys for Plaintiffs | Fahey Schultz Burzych Rhodes PLC |
| 27777 Franklin Road, Suite 2500 | Attorneys for Defendant |
| Southfield, MI 48034 | 4151 Okemos Road |
| (248) 351-3000 | Okemos, MI 48864 |
| eholtz@jaffelaw.com | (517) 381-0100 |
| samodeo@jaffelaw.com | cpatterson@fsbralw.com |
| | sreed@fsbrlaw.com |
| | mkuschel@fsbrlaw.com |
| | |
| | Thomas R. Meagher (P32959) |
| | Daniel S. Zick (P77950) |
| | Foster, Swift, Collins & Smith, P.C. |
| | Attorneys for Defendant |
| | 313 S. Washington Square |
| | Lansing, MI 48933 |
| | (517) 371-8100 |
| | tmeagher@fosterswift.com |
| | dzick@fosterswift.com |

## <u>DEFENDANT MARENGO TOWNSHIP'S ANSWER TO COMPLAINT AND PETITION FOR WRIT OF MANDAMUS, AFFIRMATIVE DEFENSES, AND RELIANCE ON DEMAND FOR TRIAL BY JURY</u>

**ANSWER TO COMPLAINT AND PETITION FOR WRIT OF MANDAMUS**

Defendant, MARENGO TOWNSHIP, through its attorneys, hereby answers Plaintiffs' Complaint dated April 5, 2022, as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for equitable, declaratory and injunctive relief arising out of Township's false promises, constitutional violations by the Township's deprivation of Plaintiffs' civil rights through its refusal and failure to comply with its own ordinances and state law as well as a common dispute resolution mechanism.

**ANSWER: Marengo Township ("Township") denies any wrongdoing or liability to the Plaintiff whatsoever. Plaintiffs' damages, if any, are the sole result of Plaintiffs' outright refusal to utilize the administrative processes set forth for establishing a marihuana cultivation operation under Michigan law.**

2.      PW was induced to purchase 22695 J. Drive North, Marshall, MI 49068 ("Property") and subsequently invest significant monies into the Property based upon representations from Township officials that an existing greenhouse ("Greenhouse") on Property that had been built and used to commercially grow peppers by the prior owner was "fully approved," "ready to go," and could be utilized for the cultivation of cannabis without further Township approval beyond issuance of a Township Class C Grower License ("Grower License") and appropriate State of Michigan licenses.

**ANSWER: The Township specifically admits, only, that the Property previously grew peppers. The remaining allegations of paragraph 2 are denied as untrue.**

3.    After Plaintiffs paid for and received their Grower Licenses from the Township, Plaintiffs proceeded to apply to the Michigan Marijuana Regulatory Agency ("MRA") for a state license.

**ANSWER:  The allegations of paragraph 3 are admitted.**

4.    MRA Regulation 420.9(5)(a) requires that an applicant provide MRA with a certificate of occupancy ("CO") for its proposed location, where such documentation is required by the municipality or "alternative documentation from the building authority," when a CO is not applicable ("CO equivalent").

**ANSWER: The Township states that MI Admin. C. R. 420.9 was recodified as MI Admin. C. R. 420.11a and that R. 420.11a(5)(a) speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of R. 420.11a(5)(a) by Plaintiffs.**

5.    The existing Greenhouse was constructed on the Property in or about 2013, without the issuance of any building permits of any kind, and then operated as a commercial greenhouse, growing peppers, without either a CO or building permits, and never received any building violations as a result thereof the whole time it was in operation until 2019.

**ANSWER: The allegations of paragraph 5 are admitted.**

6.    Since the existing Greenhouse at the Property was and always has been treated by the Township as an agricultural structure, Township never required it to have CO or building permits and is "grandfathered" exempt from the Michigan Building Code ("MBC") and Stille-Derossett-Hale Single State Construction Code, MCL 125.1510(8).

**ANSWER: The allegations of paragraph 6 are denied as untrue.**

7.     Accordingly, Plaintiffs requested that the Township execute the CO equivalent, a simple two-sentence letter confirming that the Property never had a CO because it was an agricultural property, which the MRA agreed it would accept in lieu of a CO.

**ANSWER: The Township specifically admits, only, that Plaintiffs sought a letter as an alternative to a certificate of occupancy. The Township lacks information or knowledge sufficient to form a belief about the truth of the remaining allegations of paragraph 7.**

8.     At that point, however, Township Building Official Joseph Israel ("Mr. Israel") and Township Building and Zoning Manager Hamilton ("Ms. Hamilton") intervened and would not permit the Township to execute the requested letter, simply because they believed that changing the plant grown in the existing Greenhouse from peppers to cannabis changed the use and occupancy of the existing Greenhouse from agricultural to industrial and thus the existing Greenhouse was now required to apply for building permits and seek a CO, despite that it had been built and operated for years without either.

**ANSWER: The allegations of paragraph 8 are denied as untrue.**

9.     The Greenhouse/Nursery is and never was an industrial or commercial building, simply changing the plant grown in the Greenhouse does not change the use or occupancy of the Greenhouse, and it thus remains exempt from the MBC and State Construction Code.

**ANSWER: The Township specifically admits, only, that the Greenhouse, while growing peppers, was not an industrial or commercial building. The remaining allegations of paragraph 9 are denied as untrue.**

10.    The Township contracts and/or employs South Central Michigan Construction Code Inspection, Inc. ("SCMCCI") and its principals, employees, and agents, including Mr. Israel

and Township Building and Ms. Hamilton, to conduct its code inspection.  The Township pays SCMCCI for its rulings and findings.

**ANSWER: The Township specifically admits, only, that SCMCCI performs code inspection services for the Township. The remaining allegations of paragraph 10 are denied as untrue.**

11.     Upon information and belief, if the Greenhouse is designated industrial, the Greenhouse will be subject to SCMCCI's inspections and will generate significant revenues for SCMCCI.

**ANSWER: The allegations of paragraph 11 are denied as untrue.**

12.     Mr. Israel and Ms. Hamilton's position with regard to the change in use from agricultural to industrial is not grounded in law or fact and, upon information and belief, is motivated by their positions with SCMCCI and its role as the Township's code enforcement subcontractor.

**ANSWER: The allegations of paragraph 12 are denied as untrue.**

13.     In fact, as is custom and practice in Michigan, in the event of a dispute with a building official, Plaintiffs can seek an opinion from a building official from an adjacent township.

**ANSWER: The allegations of paragraph 13 are denied as untrue.**

14.     The Township confirmed that this is a common dispute resolution mechanism.

**ANSWER: The allegations of paragraph 14 are denied as untrue.**

15.     Plaintiffs obtained opinions from three building officials representing twelve neighboring townships who agreed and supported Plaintiffs' position that the Greenhouse was not subject to the MBC.

**ANSWER: The Township specifically admits, only, that it received statements from building officials supplied by Plaintiffs. The remaining allegations of paragraph 15 are denied as untrue.**

16.     The Township and Township Supervisor David Fountain ("Mr. Fountain"), however, refused to accept these opinions and still refused to execute the requested letter, stalling Plaintiffs' application with MRA and causing Plaintiffs millions of dollars in damages.

**ANSWER: The allegations of paragraph 16 are denied as untrue.**

17.     The Township insists that Plaintiffs are required to raise this issue before the Township Construction Board of Appeals ("CBA"), but this is inaccurate.

**ANSWER: The Township specifically admits, only, that the Construction Board of Appeals provides Plaintiffs with an administrative remedy which Plaintiffs have refused to utilize. The remaining allegations of paragraph 17 are denied as untrue.**

18.     The CBA's purview, pursuant to MBC 113.1, is to provide a means of appeal of a decision of an enforcing agency and, upon information and belief, the Township must have a CBA.

**ANSWER: No answer is required as paragraph 18 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Building Code speaks for itself. The Township further states that it does not accept and reserves the right to challenge Plaintiffs' interpretation of the Building Code.**

19.     Because SCMCCI, upon information and belief, has the right to review and approve the Township's budget, the rulings of the CBA could financially benefit SCMCCI.

**ANSWER: The allegations of paragraph 19 are denied as untrue.**

20.     Upon information and belief, the members of the CBA are selected by the same individuals who prepare the Township's budget.  SCMCCI's ties to the CBA therefore undermine

its independence with respect to its ability to fairly and impartially evaluated Plaintiffs' use designation.

**ANSWER: The allegations of paragraph 20 are denied as untrue.**

21.     Additionally, upon information and belief, SCMCCI appears to have a conflict of interest and greatly benefits if this existing Greenhouse property falls under its jurisdiction.

**ANSWER: The allegations of paragraph 21 are denied as untrue.**

22.     SCMCCI stands to earn revenues if the Property requires building permits and is not exempt from the MBC.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 22.**

23.     Plaintiffs, through the Property and its cultivation operation, will pay annual fees in excess of $100,000, create approximately 100 jobs, and pay applicable taxes, generating significant revenue for the Township that has a population of 2,200 and annual revenues of approximately $700,000.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 23.**

24.     Indeed, Park paid the Township in excess of $100,000 for permits alone and SCMCCI's demand's could increase that number significantly.

**ANSWER: The Township specifically admits, only, that Park paid the statutorily required permit fees for all permits which the Township issued. The remaining allegations of paragraph 24 are denied as untrue.**

25.     Fundamentally, greenhouses are exempt from the State Construction Code and MBC as pursuant to MCL 125.1502a and the definition of "building" pursuant to the MBC, because "The term does not include a building incidental to the use for agricultural purposes of the land on which the building is located if it is not used in the business of retail trade."

**ANSWER: No answer is required as paragraph 25 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Building Code speaks for itself. The Township further states that it does not accept and reserves the right to challenge Plaintiffs' interpretation of the Building Code.**

26.     The Township has no authority to require a CO or building permits in the first place, since the existing Greenhouse is "grandfathered" and exempt from the MBC, as pursuant to MBC 101.2, it only applies to a "building," which the existing Greenhouse is not as described above.

**ANSWER: No answer is required as paragraph 26 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 26 are denied as untrue.**

27.     Accordingly, the Township's CBA does not have jurisdiction because the existing Greenhouse is exempt from the MBC, and the MBC provides that the CBA only has authority to hear an appeal in accordance with Stille-Derossett-Hale Single State Construction Code, which the Greenhouse is exempt from pursuant to MCL 125.1510(8).

**ANSWER: No answer is required as paragraph 27 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 27 are denied as untrue.**

28.     Since the existing Greenhouse is exempt from the MBC and State Construction Code and there are issues associated with SCMCCI's motivations and control over the CBA, an

administrative appeal is futile and Plaintiffs should not be forced to proceed through an administrative process that has no jurisdiction over them and will likely forestall relief Plaintiffs are entitled to, causing further delay and damage.

**ANSWER: No answer is required as paragraph 28 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 28 are denied as untrue**

29.    Plaintiffs have repeatedly sought to meet with the Township Board, but these attempts have been rebuffed and all communications have been with Matthew Kuschel, attorney for the Township.

**ANSWER: The allegations of paragraph 29 are denied as untrue.**

30.    All acts alleged herein of the Township, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, have been and are continuing to be done under the color and presence of law.

**ANSWER:  No answer is required as paragraph 30 recites conclusions of law, not statements of fact. To whatever extent the allegations of paragraph 30 do or may suggest any wrongdoing by the Township, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, they are denied as untrue.**

31.    The Township and its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, with those officials having official policymaking and decision-making authority, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials, have failed to fulfill their duties to Plaintiffs and have engaged in a policy, practice, and pattern of constitutional violations.

**ANSWER: The allegations of paragraph 31 are denied as untrue.**

32.     The Township's refusal to execute the requested letter is unjustified and arbitrary based upon a position contrary to law and contrary to the representations made to Plaintiffs both prior to and after its purchase of the Property upon which Plaintiffs relied to their detriment.

**ANSWER: The allegations of paragraph 32 are denied as untrue.**

33.     The Township's false representations and its misapplication of law are imposing an unreasonable and arbitrary restriction on the use of the Property.

**ANSWER: The allegations of paragraph 33 are denied as untrue.**

34.     Plaintiffs are unable to operate their marihuana cultivation business and has suffered substantial monetary damages that escalate daily as well as constitutional damages and bring this action seeking declaratory relief and damages including:

> A.  Issue a writ of mandamus requiring that the Township issue a CO equivalent, by a date certain, which is a ministerial act by the Township's Ordinances, representations, and attestations, including the Township Clerk Doreen VanSickle's January 21, 2022 signed attestation that Plaintiffs' establishment had complied with all local regulations and ordinances that the Township provided to Plaintiffs in support of their application with the MRA and now, seemingly disavow;

> B.  Enter an expedited declaratory judgment, trial, speedy decision, and advancement on this Court's calendar under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, 2202, because without such expedited relief Plaintiffs will suffer significant losses which could force them out of business if required to wait until the conclusion of this case;

C.  Enter a judgment that the Township should be equitably estopped from changing Plaintiffs' Property designation to an industrial use and require a building permit, pursuant to Michigan law and 28 U.S.C. § 1343(a)(4);

D.  Enter a judgment that the Township violated Plaintiffs' constitutional rights of substantive and procedural due process because Plaintiffs cannot operate their business and have been deprived of their property rights in the Property and their costly permits and licenses, including a Class C Grower License, that cost in excess of $100,000;

E.  Enter a judgment that the Township violated Plaintiffs' constitutional rights of equal protection because Plaintiffs have been treated differently from the prior owner, who was similarly situated to Plaintiffs operating the Greenhouse/Nursery on the Property in an agricultural zone, growing plants;

F.  Enter a judgment that the Township violated the Takings Clause by depriving Plaintiffs of the use of their Property;

G.  Enter a declaratory judgment that the Greenhouse is not subject to an administrative process nor the CBA, because it is an agricultural structure exempt from the MBC as it was built, operated, and "grandfathered" without building permits and a CO, and simply changing the plant from peppers to cannabis, which is not an industrial use under Michigan law, does not change the use or occupancy from agricultural to industrial;

H.  Enter a judgment for money damages for Plaintiffs' actual damages including escalating lost profits and revenue caused by the Township's

unjustified and arbitrary delays pursuant to Michigan law, 42 U.S.C. § 2202,

42 U.S.C. § 1983, 42 U.S.C. § 1988;

I.   Enter a judgment entering all equitable and declaratory relief under 28

U.S.C. § 1343(a)(4) and 28 U.S.C. § 2201, 2202, respectively;

J.   Enter a judgment requiring the payment by the Township of Plaintiffs'

attorney fees and costs pursuant to 42 U.S.C. § 1988.

**ANSWER: The allegations in paragraph 34 are denied as untrue. The Township seeks a verdict and judgment of no cause of action and seeks its costs and attorney fees as allowed by law.**

## THE PARTIES

35.   PW is a Michigan LLC, with a principal place of business in Marengo Township.

**ANSWER: The allegations of paragraph 35 are admitted.**

36.   Park is a Michigan LLC, with a principal place of business in Kalamazoo, Michigan.

**ANSWER: The allegations of paragraph 36 are admitted.**

37.   The Township is a civil township located in Calhoun County, Michigan.

**ANSWER: The allegations of paragraph 37 are admitted.**

## JURISDICTION

38.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' Equal Protection, Procedural Due Process, Substantive Due Process, and Takings Clause claims arise under the laws of the United States Constitution; because Plaintiffs seek to redress constitutional violations and deprivations of law under color of law, of rights, privileges, and immunities secured by the United States Constitution pursuant to 28 U.S.C. § 1343(a)(3);

because Plaintiffs seek equitable relief under 28 U.S.C. § 1343(a)(4); because Plaintiffs seek declaratory injunctive relief under 28 U.S.C. § 2201; 2202; and under 42 U.S.C. § 1988 to secure costs and reasonable attorney fees as part of this case.

**ANSWER: The allegations of paragraph 38 are denied as untrue. Plaintiffs' federal law claims fail to state claims upon which relief may be granted by this Court as they seek relief which is illegal under the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq*. The allegations of paragraph 38 are further denied as this Court's jurisdiction of Plaintiffs' claims for declaratory relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201 is discretionary in nature and this Court should decline to exercise such jurisdiction as doing so would increase friction between federal and state courts and improperly encroach on state jurisdiction. *Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). Further, to whatever extent that the allegations of this paragraph do or may suggest wrongdoing by the Township, they are denied as untrue.**

39.     This Court has supplemental jurisdiction over Plaintiffs' claims for Writ of Mandamus, Equitable and Promissory Estoppel, and claims brought under the Michigan Constitution pursuant to 28 U.S.C. § 1367 because they occurred in this District, Plaintiffs suffered damages in this District, and because the state law claims are so related to the claims arising under federal law that they form part of the same case or controversy under Article III of the U.S. Constitution.

**ANSWER:  The allegations of paragraph 39 are denied as untrue. This Court's exercise of supplemental jurisdiction over Plaintiffs' state law claims is discretionary and this Court should decline to exercise such jurisdiction pursuant to 28 U.S.C. § 1367(c) and the *Burford***

Abstention Doctrine. *New Orleans Public Service, Inc. v Council of City of New Orleans*, 491 U.S. 350, 361 (1989).

40. The Court has personal jurisdiction over Defendant because it is located and in this District.

**ANSWER: The allegations of paragraph 40 are admitted.**

41. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Township resides in this District.

**ANSWER: The allegations of paragraph 41 are admitted.**

42. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this litigation occurred in this District.

**ANSWER: The allegations of paragraph 42 are admitted.**

43. Plaintiffs include their request for an expedited declaratory judgment, speedy decision, and advancement on this Court's calendar under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201; 2202.

**ANSWER: The Township admits, only, that Plaintiffs have requested an expedited declaratory judgment and speedy decision. The Township denies that Plaintiffs are entitled to such relief. Further, to whatever extent the allegations of this paragraph do or may suggest any wrongdoing by the Township, they are denied as untrue.**

## GENERAL ALLEGATIONS

THE TOWNSHIP ADOPTS ORDINANCES PERMITTING MARIHUANA GROWERS IN AGRICULTURAL ZONES

44. In 2019 and 2020, following many other municipalities, the Township opted into the Michigan Marihuana Facilities Licensing Act ("MMFLA") and allowed commercial

marihuana activity within its borders and accordingly adopted ordinances permitting marihuana businesses to operate within its borders.

**ANSWER:  The allegations of paragraph 44 are admitted.**

45.     Specifically, Township adopted Ordinance No. 2019-5 at a Township Board Meeting on August 27, 2019, accepting and implementing the provisions of the MMFLA permitting grower operations, among other marihuana operations. *Exhibit 1, Ordinance 2019-5.*

**ANSWER: The allegations of paragraph 45 are admitted.**

46.     Township also adopted Ordinance No. 2019-6 at a Township Board Meeting on October 29, 2019, accepting and implementing the provisions of the Michigan Regulation and Taxation of Marihuana Act ("MRTMA") permitting grower operations, among other operations. *Exhibit 2, Ordinance 2019-6.*

**ANSWER: The allegations of paragraph 46 are admitted.**

47.     Finally, Township adopted Ordinance No. 2020-01 at a Township Board Meeting on March 31, 2020, amending the Township's Zoning Ordinance to provide for the zoning regulation of Commercial Medical Marihuana Facilities and Recreational Marihuana Establishments. *Exhibit 3, Ordinance 2020-01.*

**ANSWER: The allegations of paragraph 47 are admitted.**

48.     This Ordinance placed the Township's designated area for marihuana cultivation over ("Marihuana Overlay") an existing agriculturally-zoned district ("Agricultural Zone"). *Ex. 3, Ord. 2020-01.*

**ANSWER: The allegations of paragraph 48 are admitted.**

49.     The Township's Ordinance, 17B.02 stated that the Marihuana Overlay "is established as an overlay zoning district over portions of the AG Agricultural District in Section

2..." and "Land located within such overlay district may be developed according to the provisions of the underlying zoning district or according to the provisions of this Section." *Ex. 3, Ord. 2020-01.*

**ANSWER: The allegations of paragraph 49 are neither admitted nor denied as Township Ordinance 17B.02 speaks for itself. Further, the Township does not accept and reserves the right to challenge Plaintiff's interpretation of the Ordinance.**

50.    The Township's MO Ordinance does not alter the land's current zoning classification pursuant to Section 11 of Ordinance No. 2020-01:

> *Those properties within the MO District shall maintain their current zoning classification in addition to those uses provided by the newly-established MO District.*

*Ex. 3, Ord. 2020-01 (Emphasis added).*

**ANSWER:  No answer is required as paragraph 50 recites conclusions of law, not statements of fact. To whatever extent an answer is required, the Ordinance speaks for itself. The Township does not accept and reserves the right to challenge Plaintiffs' interpretation of the Ordinance.**

51.    The MMFLA and MRTMA allow a grower license to be issued in an area zoned for agricultural use. MCL 333.27501(9); MCL 333.27959.

**ANSWER: No answer is required as paragraph 51 recites conclusions of law, not statements of fact. To whatever extent an answer is required, the MMFLA and MRTMA speak for themselves. The Township does not accept and reserves the right to challenge Plaintiffs' interpretation of the MMFLA and MRTMA.**

52.    Agricultural uses do not require building permits under the State Construction Code, MCL 125.1501, *et. seq.* or the MBC.

**ANSWER: No answer is required as paragraph 52 recites conclusions of law, not statements of fact. To whatever extent an answer is required, the Michigan State Construction Code and the Michigan Building Code speak for themselves. The Township does not accept and reserves the right to challenge Plaintiffs' interpretation of the Construction Code and Building Code.**

53.     Under the MMFLA, MRTMA, the Township's Ordinances, and the State Construction Code, a marihuana grower business operates within the Township's Marihuana Overlay District as an agricultural use, not requiring a building permit or certificate of occupancy.

**ANSWER: The allegations of paragraph 53 are denied as untrue.**

PLAINTIFFS' BUSINESS FOCUSES ON SUSTAINABLE AND ENVIRONMENTALLY CONSCIOUS LAND USES

54.     PW is a subsidiary of Power REIT. *Exhibit 4, David Lesser Affidavit.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 54.**

55.     Power REIT is a real estate investment trust that focuses on sustainable real estate.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 55.**

56.     POWER REIT uses controlled environmental agricultural practices to grow cannabis and other plants using environmentally sustainable methods with minimal carbon footprint.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 56.**

57.     In line with its central purpose, Plaintiffs sought a property that could offer an environmentally friendly approach to marihuana cultivation with a minimal carbon footprint and became interested in the Property.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 57.**

THE PROPERTY HAS ALWAYS BEEN ZONED AGRICULTURAL

58.     Plaintiffs discovered the Property and was interested because the location, size, and existing structure of the Greenhouse/Nursery would allow a marihuana cultivation operation utilizing sunlight with a minimal carbon footprint. *Exhibit 5, Greenhouse Plan*; *Exhibit 6, Tom Piepkow Affidavit.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 58.**

59.     The Property is 65 acres of agricultural land that is zoned agricultural, upon which sits an approximately 550,000 square foot existing Greenhouse.

**ANSWER: The allegations of paragraph 59 are admitted.**

60.     The Greenhouse was constructed in or about 2013 by Kilbourn Produce, LLC ("KP").

**ANSWER: The allegations of paragraph 60 are admitted.**

61.     During the Greenhouse's construction, KP communicated with the Township concerning what applications and permits would be required for its construction and use.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 61.**

62.     The Township designated the Greenhouse an agricultural use and did not require any permits or applications for a CO.

**ANSWER: The Township specifically admits, only, that as a structure to grow peppers, the greenhouse did not require a certificate of occupancy. The remaining allegations of paragraph 62 are denied as untrue.**

63.     KP went before the Township Planning Commission, who verbally approved the Greenhouse because it was an agricultural use.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 63.**

64.     KP never applied for a building permit and never sought nor obtained a CO. *Ex. 6, Piepkow*.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 64.**

65.     Numerous Township officials visited the Greenhouse during its construction and never raised any issue or concern.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 65.**

66.     Upon its completion, KP operated the Greenhouse from 2013 to 2019. *Ex. 6, Piepkow*.

**ANSWER: The allegations of paragraph 66 are admitted.**

67.     During that time, KP did not receive any violations or citations as the result of its lack of building permits or a CO. *Ex. 6, Piepkow*.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 67.**

68.     Township accordingly accepted and permitted the use of the Greenhouse without a CO or building permits, which is thus a "grandfathered" use.

**ANSWER: The allegations of paragraph 68 are denied as untrue.**

THE TOWNSHIP INDUCED PW TO BUY THE PROPERTY

69.     KP began to have financial difficulties and ceased operations at some time in 2019, after it had operated the Greenhouse for several years.

**ANSWER: The allegations of paragraph 69 are admitted.**

70.     On or about November 2019, the Calhoun County Circuit Court appointed a Receiver to take possession of the Property and market its sale for the benefit of KP's creditors.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 70.**

71.     The Receiver then placed the Property on the market.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 71.**

72.     The Property was marketed by the Receiver primarily not as a greenhouse to grow peppers, but rather as a greenhouse to grow marihuana based on the marihuana overlay on top of the agriculture zoning.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 72.**

73.     When the Township adopted the MO Ordinance, it expressly designated the Property as suitable for marihuana cultivation.

**ANSWER: The Township specifically admits, only, that the Property is part of the Marihuana Overlay Zoning District. The remaining allegations of paragraph 73 are denied as untrue in the form stated as the MO designation only represented that the property within it was zoned for marihuana cultivation and did not make any representations that all land and structures within the MO were "suitable" for marihuana cultivation.**

74.     The Receiver attempted to complete sales of the Property to potential buyers for over two years, and the buyers intended to use the Property and the Greenhouse as a marihuana cultivation facility.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 74.**

75.     At least three different buyers had the Property under contract, but none were able to complete its purchase.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 75.**

76.     In or about mid-2021, POWER REIT, PW's parent company, became aware of the Property.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 76.**

77.     As part of its due diligence, on or about May 13, 2021, David Lesser ("Lesser"), CEO of PW's parent company POWER REIT, met with Greg Shippel ("Shippel"), the Township Planning Commission's then Chairman. *Ex. 4, Lesser*.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 77.**

78.     The purpose of the meeting was to determine whether, if PW were to purchase the Property, it could quickly commence cannabis cultivation operations.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 78.**

79.     Mr. Shippel assured Lesser that POWER REIT and PW could quickly move forward with cannabis cultivation operations. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 79. Further, the Township denies that Mr. Shippel, as Chair of the Planning Commission, has any jurisdiction or authority over interpretation or enforcement of the building code.**

80.     Mr. Shippel explained to Lesser that the Township had specifically designated this Property for the cultivation of marihuana and designated it so in the MO Ordinance. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 80.**

81.     Mr. Shippel showed Lesser the MO Zoning Map which designated this specific property as part of the Township's MO District, even though it was separate, not contiguous with, and outside of any other property or district where cannabis operations were permitted. *Ex. 4, Lesser.*

**ANSWER: The Township specifically admits, only, that the Property is part of the Marihuana Overlay Zoning District. The Township lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations of paragraph 81.**

82.     Mr. Shippel explained to Lesser that the Township's entire marihuana zoning process was designed to get this specific property approved for marihuana cultivation as an

inducement for an operator to get the Greenhouse back into operation and produce jobs and tax revenue for the Township and its community. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 82.**

83.     Mr. Shippel led Mr. Lesser to believe that Township was in favor of marihuana cultivation at the Property and that if PW purchased it, the Greenhouse could be put into use for marihuana cultivation quickly, without any lengthy approval process, and all that would be needed would be the purchase of local and state cannabis licenses. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 83.**

84.     At no time did Mr. Shippel convey that the Township designated growing marihuana, rather than peppers, as a change of use that would require a CO. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 84.**

85.     Lesser left the meeting with Mr. Shippel with the understanding that there would be no impediments to cannabis cultivation at the Property. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 85.**

86.     Relying on this information supplied by Mr. Shippel and the understanding of the facts presented by Mr. Shippel, PW decided to purchase the Property. *Ex. 4, Lesser.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 86.**

87.     After another party failed to close, on or about May 24, 2021 PW executed a contract to purchase the Property.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 87.**

88.     On or about September 3, 2021, PW closed on the purchase of the Property and paid Receiver $18,422,000. *Exhibit 7, Property Transfer Affidavit*.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 88.**

89.     The value of this Property and the existing, grandfathered Greenhouse is and was significantly increased because of the ability to grow cannabis in the Greenhouse – otherwise it would have far less value.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 89.**

PLAINTIFFS EXPERIENCE DELAYS AND DIFFICULTIES WHERE THEIR BUILDING PERMIT APPLICATION IS REJECTED BY THE TOWNSHIP BECAUSE THE GREENHOUSE IS AN AGRICULTURAL PROPERTY

90.     Plaintiffs had discussions with Township officials as to the use of the Property.

**ANSWER: The allegations of paragraph 90 are admitted.**

91.     The Township represented that the Property was agriculturally zoned, the Property was fully approved and "ready to go," and should not need any further permits or approvals from the Township. *Exhibit 8, Leise Rosman Affidavit, Park consultant; Ex. 4, Lesser*.

**ANSWER: The Township specifically admits, only, that the Property is part of the Marihuana Overlay Zoning District. The remaining allegations of paragraph 91 are denied as untrue.**

92.     After purchasing the Property, Plaintiffs sought and acquired multiple approvals from the Township. *Ex. 4, Lesser; Ex. 8, Rosman.*

**ANSWER: The allegations of paragraph 92 are admitted.**

93.     Plaintiffs sought and acquired a Class C Grower's License, Conditional Use Permit, and Site Plan approval under the MMFLA and MRTMA.  *Ex. 8, Rosman.*

**ANSWER: The allegations of paragraph 93 are admitted.**

94.     Although Lesser had been assured these approvals would come quickly, it took three formal hearings and several months for Plaintiffs to obtain them. *Ex. 4, Lesser; Ex. 8, Rosman.*

**ANSWER: The allegations of paragraph 94 are denied as untrue.**

95.     Nevertheless, Plaintiffs did obtain these approvals which certified that the proposed location and use complied with Township's underlying zoning district (agriculture) and the requirements of the Township's Marihuana Overlay District under Ordinance 2020-01, Section 17B. *Ex. 8, Rosman.*

**ANSWER:  The Township specifically admits, only, that the Property is part of the Marihuana Overlay Zoning District. The remaining allegations of paragraph 95 are denied as untrue in the form stated.**

96.     Plaintiffs paid the Township in excess of $100,000 for such approvals, a Class C License, and a conditional use permit to grow cannabis at the Property. *Ex. 8, Rosman.*

**ANSWER: The allegations of paragraph 96 are admitted.**

97.     Plaintiffs quickly commenced the minor facility upgrades to ensure the Greenhouse was ready for cultivation.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 97.**

98.     As configured, the Greenhouse is to operate using light-diffusing glass panels, curtains, and hydroponic growing that relies on natural sunlight. *Ex. 6, Piepkow.*

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 98.**

99.     The "green" growing methods are sustainable and has a minimal carbon footprint and differentiate Plaintiffs from the vast majority of marihuana growers that utilize high-energy artificial light sources and significant HVAC and other industrial techniques and equipment which create a significant carbon footprint and are not environmentally friendly.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 99.**

100.     On or around January 21, 2022, Plaintiffs obtained two attestations from Township Clerk Doreen VanSickle ("Ms. VanSickle"), who attested to Park that the Greenhouse was in full compliance with the Township's Ordinances:

> *The proposed establishment is in compliance with all regulations and ordinances within the municipality, including zoning ordinances.*
>
> *Exhibit 9, Attestations. (Emphasis added.)*

**ANSWER: The best evidence of the contents of the attestations referenced in paragraph 100 are the attestations themselves. The Township does not accept and reserves the right to challenge any interpretation of the attestations by Plaintiffs.**

101.     With those attestations in hand, the Greenhouse was ready for cultivation, and Plaintiffs set about to obtain their State operating license from MRA.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 101.**

THE TOWNSHIP'S DECISION NOT TO ISSUE A CERTIFICATE OF OCCUPANCY OR EQUIVALENT PREVENTS PLAINTIFFS' FINAL APPROVAL WITH THE STATE OF MICHIGAN

102.    MRA Reg. 420.9(5)(a) requires that an applicant provide MRA with a CO where such documentation is required by the municipality, or "alternative documentation from the building authority" also known as a CO equivalent, when a CO is not applicable.

**ANSWER: No answer is required as the allegations of paragraph 102 recite conclusions of law, not statements of fact. To the extent an answer is required, the Township states that MI Admin. C. R. 420.9 was recodified as MI Admin. C. R.420.11a and that R. 420.11a(5)(a) speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of -R. 420.11a(5)(a) by Plaintiffs.**

103.    Accordingly, because the Greenhouse did not have nor require a CO, Plaintiffs would have to present a CO equivalent to the MRA in order to complete its license application.

**ANSWER: No answer is required as the allegations of paragraph 103 recite conclusions of law, not statements of fact. To the extent an answer is required, the allegations of paragraph 103 are denied as untrue.**

104.    Plaintiffs contacted the Township about obtaining an acceptable CO equivalent.

**ANSWER: The allegations of paragraph 104 are admitted.**

105.    Plaintiffs presented the Township with a letter that would meet the CO equivalent requirements, which simply stated:

*To whom it may concern:*

*It is the understanding of the Township that the greenhouse building at the proposed location at 22695 J Drive N, Marshall, Michigan has never required,*

> *nor been granted, a Certificate of Occupancy for any prior use. The use of this building for agricultural purposes does not require a Certificate of Occupancy.*

*Exhibit 10, Email, CO equivalent letter. (Emphasis added)*

**ANSWER: The allegations of paragraph 105 are denied as untrue.**

106.   Brian Hanna, MRA's Manager of Field Operations-Inspections, confirmed that the letter prepared by Plaintiffs was an acceptable CO equivalent that MRA would accept in lieu of a CO:

*Yes, we would accept the letter from the township supervisor as a CoO equivalent.*

*Exhibit 11, Email, CO equivalent confirmation. (Emphasis added)*

**ANSWER: No answer is required as the allegations of paragraph 106 recite conclusions of law, not statements of fact. To the extent an answer is required, the allegations of paragraph 106 are denied as untrue.**

107.   Plaintiffs requested that the Township execute the letter so it could proceed with their State Marihuana application, but the Township refused. *Ex. 9, CO equivalent*.

**ANSWER: The allegations of paragraph 107 are admitted.**

108.   During a series of phone calls, Mr. Israel advised that they would not permit the Township to execute such a CO equivalent letter because Mr. Israel, upon being notified of Plaintiffs' request, took the position that changing the plant grown in the Greenhouse from peppers to cannabis is a change of use, which would require a building permit and CO.

**ANSWER: The Township specifically admits, only, that Plaintiffs were informed that they would require a building permit and CO. The remaining allegations of paragraph 108 are denied as untrue in the form stated.**

109.   Building and Zoning Manager Ms. Hamilton took the same position regarding the use of the Greenhous.

**ANSWER: The Township specifically admits, only, that Plaintiffs were informed that they would require a building permit and CO. The remaining allegations of paragraph 109 are denied as untrue in the form stated.**

110.    Mr. Israel position, reiterated by the Township Attorney Matthew Kuschel, Esq., in a February 24, 2022 email, stated that he believed: (1) the Property's use under the MBC changed from Group U (*agricultural*) to F-1 (*industrial*) and (2) the use has changed from agricultural to industrial. *Exhibit 12, Email, 2-24-2022 Kuschel*.

**ANSWER: The best evidence of the contents of the email referenced paragraph 110 is the email itself. The Township does not accept and reserves the right to challenge any interpretation of the email by Plaintiffs.**

111.    Mr. Israel's opinion was that (A) the use changed to F-1 because, Mr. Kuschel's email explained, the MBC provides that "hemp" is in the F-1 Group and "hemp" is the closest analogous situation to cannabis and (B) the State marihuana laws provide that growing cannabis is an industrial use.

**ANSWER: The best evidence of the contents of the email referenced paragraph 111 is the email itself. The Township does not accept and reserves the right to challenge any interpretation of the email by Plaintiffs.**

112.    However, the MBC does not actually use the term "hemp," but rather "hemp products," which are two very different things as explained below.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 112 are denied as untrue.**

113.    Mr. Israel's position is legally and factually inaccurate.

**ANSWER: The allegations of paragraph 113 are denied as untrue.**

114.   Seeking to resolve the dispute, Plaintiffs engaged in a series of lengthy communications with the Township attorney. *Exhibit 13, Plaintiff counsel's emails with Township Attorney*; *Exhibit 14, 3-17-2022, Email request for meeting with Supervisor*.

**ANSWER: The allegations of paragraph 114 are admitted.**

115.   Plaintiffs consulted with the Township attorney, who expressed that it was his belief that Plaintiffs were required to bring an appeal before the Township's CBA.

**ANSWER: The allegations of paragraph 115 are admitted.**

116.   That position is in error because the existing, grandfathered Greenhouse is an agricultural building, exempt from the MBC and State Construction Code, and not required to obtain building permits.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 116 are denied as untrue.**

117.   Indeed, as an agricultural property, there is not even a permit for Plaintiffs to apply for.

**ANSWER: The allegations of paragraph 117 are denied as untrue.**

118.   Plaintiffs continued to engage in conversation with the Township attorney in an attempt to resolve the dispute. To assist in this process, Plaintiffs retained professional engineer David Kubiske, P.E., who has been a licensed engineer for over 40 years, served as a Board-Certified Building Inspection Engineer and a Registered ACT 54 State Plan Reviewer for the State of Michigan #004530, served on Bedford Township's Construction Board of Appeals, Ida

Township's Board of Review, and as Township Engineer for numerous Michigan municipalities. *Exhibit 15, Affidavit of David Kubiske, P.E.*

**ANSWER: The allegations of paragraph 118 are admitted.**

119.    Mr. Kubiske advised Plaintiffs that it is common custom and practice in Michigan that in the event of a dispute of the nature that exists between Plaintiffs and the Township, a party may seek review of a determination of a township building official's position by a building official from an adjacent municipality upon approval from the subject township's supervisor. *Ex. 15, Kubiske.*

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 119.**

120.    Plaintiffs thereafter presented such a request to the Township Supervisor and the Township acknowledged that this is in fact a customary and commonly used practice to resolve a dispute like this instant dispute. *Exhibit 16, Email, 3-18-2022, Opinions of Neighboring Communities.*

**ANSWER: The Township specifically admits, only, that Plaintiffs presented the request to the Township. The remaining allegations of paragraph 120 are denied as untrue in the form stated.**

121.    Plaintiffs then submitted to the Township the opinions of three (3) building officials that serve a total of twelve (12) neighboring Townships. *Exhibit 17, Building Official Frank Ballard Letter; Exhibit 18, Building Official Brian Buchanan Letter; Exhibit 19, Building Official Bryan Powers Letter.*

**ANSWER: The allegations of paragraph 121 are admitted.**

122. Each of those building officials opined that:

A. The Greenhouse is exempt from the building code and does not require a building permit;

B. The Greenhouse does not require a certificate of occupancy;

C. The Greenhouse is an agricultural use;

D. If this Greenhouse was located in any of the seven townships served by these officials, they would have immediately accommodated Plaintiffs' request for alternative documentation.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 122 are denied as untrue.**

123. Despite Plaintiffs' attempts and opinions of these building officials, the Township and Mr. Fountain refused to accept these second opinions, did not alter their position, and refused to execute the requested CO equivalent letter. *Ex. 14; Ex. 16*.

**ANSWER: The allegations of paragraph 123 are admitted.**

124. In an attempt to rebut Plaintiff's multiple supportive opinions from neighboring communities, the Township produced an opinion from an SCMCCI code consultant from Harbor Springs, Kenneth Cooper, indicating the lack of support pursuant to the Township's "custom and practice." *Exhibit 20, Kenneth Cooper Email and Opinion*.

**ANSWER: The allegations of paragraph 124 are admitted.**

125. Harbor Springs is not in any way adjacent to the Township, but rather it seems, the Township had to travel to the complete opposite end of the State to find someone to support its position, rendering the presentation of this opinion highly suspicious.

**ANSWER: The allegations of paragraph 125 are denied as untrue.**

126.    Because Plaintiffs' existing Greenhouse is a grandfathered agricultural structure not subject to, and therefore exempt from the MBC and State Construction Code, and an administrative appeal or variance is futile.

**ANSWER: The allegations of paragraph 126 are denied as untrue. Answering further, the Michigan Building Code vests the Construction Board of Appeals with jurisdiction to hear an appeal that "the provisions of the code do not apply . . . ." Michigan Building Code, Section 113.1. Plaintiffs have refused to utilize this available administrative process to seek a determination regarding the applicability of the Michigan Building Code.**

127.    An administrative appeal will be futile because the Greenhouse is not under the jurisdiction of the CBA.

**ANSWER: The allegations of paragraph 127 are denied as untrue.**

128.    The position of Township Supervisor Mr. Fountain, Building Official Mr. Israel, and Building and Zoning Manager Hamilton, are wrong and contrary to law.

**ANSWER: The allegations of paragraph 128 are denied as untrue.**

MICHIGAN'S REGULATORY SCHEME CONFIRMS THAT GROWING CANNABIS IN A GREENHOUSE IS AN AGRICULTURAL USE

129.    Under Michigan law and regulations, marihuana cultivation is an agricultural, and not industrial, process.

**ANSWER: The allegations of paragraph 129 are denied as untrue.**

130.    Pursuant to the Section 302 of the MBC, every structure is classified for use.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the**

Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.

131.    The MBC and Michigan Energy Code define a "greenhouse" as a "structure or thermally isolated area of a building that maintains a specialized sunlit environment used for, and essential to, the cultivation, protection or maintenance of plants."

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

132.    Section 312.1 of the MBC states that "agricultural buildings" and "greenhouses" are designated a Group U classification.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

133.    MCL 211.34(c) defines an agricultural building as including one used for "growing and harvesting any agricultural, horticultural, or floricultural commodity."

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that MCL 211.34(c) speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of MCL 211.34(c) by Plaintiffs.**

**Michigan's Regulatory Scheme Confirms that Cannabis is a Plant**

134.　The Michigan Medical Marihuana Regulation Act ("MMMRA") defines the "marihuana plant" as "any **plant** of the species Cannabis sativa L." MCL 333.26423(g).

**ANSWER: No answer is required as the statute speaks for itself. Further, the Township states that the Michigan Medical Marihuana Act, MCL 333.26423(e) incorporates the definition of the Michigan Regulation and Taxation of Marihuana Act, 2018 IL 1, MCL 333.27953. To the extent that an answer is required, the allegations of paragraph 134 are admitted.**

135.　MCL 333.27953(e) defines a "marihuana grower" as a person "licensed to cultivate marihuana." MCL 333.27953(j).

**ANSWER: No answer is required as MCL 333.27953(j) speaks for itself. To the extent that an answer is required, the allegations of paragraph 135 are admitted.**

136.　MRTMA defines "marihuana' as a "**plant** of the genus Cannabis…"

**ANSWER: No answer is required as the statute speaks for itself. To the extent that an answer is required, the allegations of paragraph 136 are admitted.**

137.　MRTMA, MCL 333.27953(c), defines Industrial hemp as a **plant**.

**ANSWER: No answer is required as the statute speaks for itself. To the extent that an answer is required, the allegations of paragraph 137 are admitted.**

138.　The MMFLA defines a "marihuana **plant**" as "any plant of the species Cannabis sativa L, and a marihuana plant does not include industrial hemp. MCL 333.27102(m); see also, sections (k), (l).

**ANSWER: No answer is required as the statute speaks for itself. To the extent that an answer is required, the allegations of paragraph 138 are admitted.**

139.    Growing a plant is clearly an agricultural use and is what is intended at this existing Greenhouse.

**ANSWER: The allegations of paragraph 139 are denied as untrue.**

140.    Accordingly, growing marihuana, a plant, is an agricultural/horticultural activity and a greenhouse doing so is an agricultural building pursuant to Section 312.1 of the MBC.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 140 are denied as untrue.**

### Township's Classification of Marihuana As the Same As Hemp Products is Without Support

141.    Township contends that since it believes that "hemp [products]" are listed as an F-1 use classification in the MBC (MBC 306.2), that "marihuana plants" should also be considered an F-1 use classification.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 141 are denied as untrue in the form stated.**

142.    F-1 Use Groups, which focus on manufacture, are industrial in nature.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 142 are denied as untrue in the form stated.**

143.    Notably, Group F occupancies include "the use of a building or structure, or portion thereof, for **assembling, disassembling, fabricating, finishing, manufacturing, packaging, repair or processing operations**…" MBC, Section 306.1.

**ANSWER: The Township states that the Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

144.    Indeed, Group F occupancies convert harvested crops into goods or products, which will not be done in the Greenhouse.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 144 are denied as untrue in the form stated.**

145.    By way of example, the portion of the MBC that the Township and its officials rely upon is titled "Factory Group F" and includes, "among others, the use of a building or structure, or a portion thereof, for assembling, disassembling, fabricating, finishing, manufacturing, packaging, repair or processing operations that are not classified as a Group H hazardous or Group S storage occupancy."

**ANSWER: The Township states that the Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

146.    Section 306.2, which the Township purportedly relies upon, provides a list of exemplar uses that qualify as F-1, which are manufacturing of the following:

> A.    Aircraft;
>
> B.    Appliances;
>
> C.    Athletic equipment;
>
> D.    Automobiles and other motor vehicles;
>
> E.    Bakeries;

F.       Beverages over 16-percent alcohol content;

G.        Bicycles;

H.       Boats;

I.        Brooms or brushes;

J.        Business machines;

K.       Cameras and photo equipment;

L.       Canvas or similar fabric;

M.       Carpets and rugs (includes cleaning);

N.       Clothing;

O.       Construction and agricultural machinery;

P.       Disinfectants;

Q.       Dry cleaning and dyeing;

R.       Electric generation plants;

S.       Electronics;

T.       Engines (including rebuilding);

U.       Food processing establishments and commercial kitchens not associated with restaurants, cafeterias and similar dining facilities more than 2,500 square feet (232 m2) in area;

V.       Furniture;

W.       Hemp products;

X.       Jute products;

Y.       Laundries;

Z.       Leather products;

AA. Machinery;

BB. Metals;

CC. Millwork (sash and door);

DD. Motion pictures and television filming (without spectators);

EE. Musical instruments;

FF. Optical goods;

GG. Paper mills or products;

HH. Photographic film;

II. Plastic products;

JJ. Printing or publishing;

KK. Recreational vehicles;

LL. Refuse incineration;

MM. Shoes;

NN. Soaps and detergents;

OO. Textiles;

PP. Tobacco;

QQ. Trailers;

RR. Upholstering;

SS. Wood distillation; and

TT. Woodworking (cabinet).

**ANSWER:** **The Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

147.    The term "hemp products" is not defined by Michigan statute.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 147 are denied as untrue.**

148.    Hemp products are widely understood to refer to products which are made from hemp plants, just as citrus products, like orange juice, are made from citrus plants, and paper is made from trees.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 148.**

149.    Typical hemp products include hemp oils, hemp fuel (biodiesel), hemp seeds, hemp powders, body washes, creams, hemp fibers, etc.  The manufacture of these hemp products requires an industrial designation and offer an important distinction from the hemp plants crop because "hemp product" manufacturing and storage carry more hazard to an occupancy.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 149.**

150.    The MBC recognizes this distinction. Growing plants is an agricultural use while processing those plants into products is an industrial use under Section 306.2 of the MBC where:

> A.  Growing hops is an agricultural use, but turning it into beer through processing is an F-1 Group use;
>
> B.  Growing trees is an agricultural use, but processing them into paper, wood, or cabinets is an F-1 Group use;
>
> C.  Growing cotton is an agricultural use, but processing it into textiles or clothes is an F-1 Group use;

D. Growing vegetables is an agricultural use, but food processing establishments are an F-1 Group use;

E. Raising livestock is an agricultural use, but processing leather products is an F-1 Group use;

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 150 are denied as untrue.**

151.    The MBC does not, however, list every single crop that could ever be grown in an agricultural use, as this would take volumes to do.

**ANSWER: The Township states that the Michigan Building Code speaks for itself. In answering further, the Township admits that the Michigan Building Code does not list every single crop that could ever be grown.**

152.    Rather, MBC indicates that growing plants, and especially growing plants in a "greenhouse," is an agricultural use.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 152 are denied as untrue.**

153.    Manufacturing things from what is grown in an agricultural facility converts the use from agricultural to industrial.  This distinction separates occupancies involving growing raw materials, from occupancies where those raw materials are used to manufacture products.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 153 are denied as untrue.**

## The Use Derives from the Level of Hazard Involved

154. The MBC defines a change in occupancy as a "change in the purpose or level of activity within a building that involves a change in the application of the requirements of this Code." MBC 202.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

155. Under the MBC, the deciding factor in whether there has been a change of occupancy is whether the purpose or activity has changed such that the building's *occupant load or hazards* have changed such that different building code requirements should apply.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Building Code speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Building Code by Plaintiffs.**

156. The Plaintiffs will utilize the existing Greenhouse in the same way that it has always been used, namely as a green and environmentally friendly plant growing facility.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 156.**

157. No significant structural changes are contemplated for the Greenhouse in anticipation of marihuana cultivation.

**ANSWER: The allegations of paragraph 157 are denied as untrue.**

158.    Plaintiffs' plans do not involve utilizing additional power, equipment, or other methods such that the grow operation would be considered more hazardous than any other agricultural use of the facility.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 158.**

159.    Thus, simply changing the plant grown in the Greenhouse does not change the use or occupancy of the Greenhouse which remains a "grandfathered" agricultural structure exempt from the MBC and any CO requirements.

**ANSWER: The allegations of paragraph 159 are denied as untrue.**

160.    The applicable use turns on the level of hazard involved.  Agricultural use – growing plants – is a lower hazard than converting raw materials into products derived from those plants.  The greater hazard warrants the industrial use designation.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 160 are denied as untrue.**

161.    Growing plants in a greenhouse is not inherently hazardous.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 161 are denied as untrue.**

162.    In fact, this Greenhouse in particular maintained its Group U (Agricultural) use designation during the time it was in operation and growing 5.5 million pounds of peppers annually for commercial sale and human consumption.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 162.**

### Cannabis is not an Industrial Use

163.    The Township Attorney's letter and position also incorrectly argued that "definitions" provided by the MMFLA and MRTMA support a finding that any cannabis grower facility is "industrial" and therefore subject to permitting pursuant to the MBC based on a reference to a commercial entity.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 163 are denied as untrue.**

164.    The MMFLA defines "Grower as a "commercial entity," MCL 333.27102(g), which, in plain language, refers to its being "occupied with or engaged in commerce or work intended for commerce." (Merriam-Webster Dictionary).

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 164 are denied as untrue.**

165.    The Township is trying to use the reference to "commercial entity" as a basis to convert the use from "agricultural" to "industrial."

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 165 are denied as untrue.**

166. A "commercial entity' is not the same as an industrial use. The greenhouse was previously a commercial entity engaged in growing and selling peppers and was clearly considered and Agricultural property.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 166 are denied as untrue.**

167. Farms, which are agricultural, can be commercial entities. That farms are commercial entities does not convert them to an industrial designation.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 167 are denied as untrue.**

168. Michigan law defines "industrial" in the Plant Rehabilitation and Industrial Development Districts Act, MCL 207.551 et seq., as including:

> *a high-technology activity, operation of a strategic response center, operation of a motorsports entertainment complex, operation of a logistical optimization center, operation of qualified commercial activity, operation of a major distribution and logistics facility, the manufacture of goods or materials, creation or synthesis of biodiesel fuel, or the processing of goods and materials by physical or chemical change; the operation of a hydro-electric dam by a private company other than a public utility; and agricultural processing facilities.*
> *(Emphasis added.)*

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the statute speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the statute by Plaintiffs.**

169. The Greenhouse is more akin in its construction and operation to a garden hoop house than an industrial manufacturing facility. The low-tech Greenhouse has dirt floors; it allows

energy from the sun to reach plants through a glass roof; and it protects the plants from the elements by way of membranous walls.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 169 are denied as untrue.**

170.     None of these characteristics are industrial.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 170 are denied as untrue.**

171.     No processing of said plants into cannabis infused products, which requires its own unique local and state licenses distinct from the cultivation function, will occur in the Greenhouse.

**ANSWER: The Township lacks sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 171.**

172.     Indeed, as a licensed marihuana grower, Plaintiffs are not permitted to process marihuana but are only permitted to cultivate and sell or transfer such plant product to other licensees.  MCL 333.27953(j).

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the statute speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the statute by Plaintiffs.**

173.     Michigan's Industrial Hemp Act, MCL 333.29101 et. seq. ("IHA"), further illustrates the distinction between growing hemp (agricultural process) and processing hemp products (industrial process).

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the statute speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the statute by Plaintiffs.**

174. A grower cultivates industrial hemp, MCL 333.29201, and is regulated by the Michigan Department of Agriculture and Rural Development, MCL 333.29103.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 174 are admitted.**

175. The IHA defines a "grow" or "growing" as "to plant, propagate, cultivate, or harvest live plants or viable seed. Grow or growing includes drying and storing harvested industrial hemp, possessing live industrial hemp plants or viable seed on a premises where the live industrial hemp plants or viable seed are grown, and selling harvested industrial hemp to a processor or processor licensed under the medical marihuana facilities licensing act, 2016 PA 281, MCL 333.27101 to 333.27801, as authorized under this act. Grow or growing does not include selling an industrial hemp product or smokable hemp flower." MCL 333.29103(l).

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the statute speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the statute by Plaintiffs.**

176. A grower is not a processor, because once industrial hemp enters the processing stage, it is regulated by MMFLA, MCL 333.29313.

**ANSWER: The allegations of paragraph 176 are denied as untrue. See Industrial Hemp Research and Development Act, Act 547 of 2014, MCL 286.847.**

177.    The IHA makes it clear that growing hemp remains an agricultural activity while processing the plant into products is what becomes industrial.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 177 are denied as untrue.**

178.    Under the IHA, processing converts industrial hemp from an agricultural to an industrial use.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 178 are denied as untrue.**

179.    The IHA's distinction between growing hemp and processing hemp into products is directly relevant to Plaintiffs' growing of marihuana.  The hemp plant/hemp product example exhibits that the Township and Mr. Israel's analogy between industrial hemp products and marihuana plants is entirely inapplicable.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 179 are denied as untrue.**

180.    Since Plaintiffs will be growing plants, in fact a different strain of the same plant as industrial hemp (Cannabis), Plaintiffs' utilization of the existing Greenhouse remains agricultural.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 180 are denied as untrue.**

### The RTFA Also Supports a Finding of Agricultural Use

181.    Highlighting distinction between "commercial" and "industrial" that the Township seems to miss, the Right to Farm Act (RTFA), MCL 286.471 et seq., governs entities that commercially produce plants for sale for a profit.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 181 are denied as untrue.**

182.    The RTFA defines farm and farm operation as follows:

(a) "Farm" means the land, plants, animals, buildings, structures, including ponds used for agricultural or aquacultural activities, machinery, equipment, and other appurtenances used in the commercial production of farm products.

(b) "Farm operation" means the operation and management of a farm or a condition or activity that occurs at any time as necessary on a farm in connection with the commercial production….

(c)  "Farm product" means those **plants** and animals **useful to human beings** produced by agriculture and includes, but is not limited to … berries, herbs, fruits, vegetables, flowers, seeds, grasses, nursery stock, trees and tree products, mushrooms, and other similar products, or any other product which incorporates the use of food, feed, fiber, or fur, as determined by the Michigan commission of agriculture. *(Emphasis added.)*

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the statute speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the statute by Plaintiffs.**

183.    The MMFLA expressly contemplates that growing marihuana is an agricultural activity.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 183 are denied as untrue.**

184.    Specifically, a "grower" may not operate in an area "unless the area is zoned for industrial or agricultural uses or is unzoned…" MCL 333.27501(9). *See also*, MRTMA, MCL 333.27956; MCL 333.27956.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the statute speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the statute by Plaintiffs.**

185.    Accordingly, it was expressly contemplated by the Legislature that growing marihuana plants could be classified as an agricultural activity.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 185 are denied as untrue.**

186.    The MMFLA allows for both agricultural and industrial zoning – there are different kinds of activities permitted and they can be agricultural, industrial or neither.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 186 are denied as untrue.**

187.    Like the distinction in use between growing Hemp Plants and manufacturing Hemp Products, growing marihuana can take place on agricultural property while processing marihuana products can be an industrial activity, required to be on industrial zoned land.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 187 are denied as untrue.**

188.     Michigan's regulatory scheme requires a finding that changing the plant in the Greenhouse does not change the occupancy designation of the Greenhouse.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 188 are denied as untrue.**

189.     Indeed, there is no authority under the MBC that supports the conclusion that changing the plant grown in the Greenhouse changes the use or occupancy thereof.

**ANSWER: No answer is required to this paragraph as it alleges conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 189 are denied as untrue.**

THE TOWNSHIP AND ITS OFFICIALS VIOLATED PLAINTIFFS' RIGHTS PURSUANT TO A POLICY, PATTERN, AND PRACTICE UNDER THE COLOR OF LAW

190.     All acts alleged herein of the Township, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials, have been and are continuing to be done under the color and presence of law.

**ANSWER: No answer is required as paragraph 190 recites conclusions of law, not statements of fact. To whatever extent the allegations of paragraph 30 do or may suggest any wrongdoing by the Township, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, they are denied as untrue.**

191.     The Township has at all times been aware of the conduct of its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Building and Zoning Officials, but has remained deliberately indifferent.

**ANSWER: The allegations of paragraph 191 are denied as untrue.**

192.     The Township permitted, condoned, and/or ratified the conduct of its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials.

**ANSWER: The allegations of paragraph 192 are denied as untrue.**

193.     The Township through its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials, adopted the policy, practice, and pattern that changed the Greenhouse from an agricultural to an industrial use, requiring additional structural changes, building permits, and a CO.

**ANSWER: The allegations of paragraph 193 are denied as untrue.**

194.     The Township's policy has been established by officials with final decision-making and policy-making authority, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials.

**ANSWER: The allegations of paragraph 194 are denied as untrue.**

195. On or around February 24, 2022, Plaintiffs, their counsel, Township Attorney, Mr. Israel, and Ms. Hamilton, held a conference call wherein Plaintiffs requested that the Township designate the Property/Greenhouse as an agricultural use.

**ANSWER: The allegations of paragraph 195 are admitted.**

196. The Township denied Plaintiffs' request during the above conference call, as the Township officials stated their policy that the Property/Greenhouse was an industrial use, not agricultural, requiring additional structural changes, building permits, and a CO.

**ANSWER: The allegations of paragraph 196 are denied as untrue in the form stated.**

197. On March 4, 2022, the Plaintiffs' requested a CO equivalent, which was communicated to the Township and its Building Department.

**ANSWER: The allegations of paragraphs 197 are admitted.**

198. The Township denied this request. *Exhibit 21, Email, 3-4-2022.*

**ANSWER: The allegations of paragraph 198 are admitted.**

199. On or around March 18, 2022, Plaintiffs submitted a request to Mr. Fountain for review of the Township's decisions by building officials in neighboring communities. *Ex. 16.*

**ANSWER: The allegations of paragraph 199 are admitted.**

200. Plaintiffs produced three second-opinions supporting an agricultural use designation of the Property/Greenhouse, but Mr. Fountain denied this request and did not approve the second opinions. *Ex. 16; Ex. 17; Ex. 18; Ex. 19.*

**ANSWER: The allegations of paragraph 200 are admitted.**

201. On March 29, 2022, Plaintiffs produced a draft version of this instant complaint to Township Attorney requesting that he present the draft complaint to the Township Board. *Exhibit 22, Email, 3-29-2022.*

**ANSWER: The allegations of paragraph 201 are admitted.**

202.    Upon information and belief, the Township Board reviewed the draft complaint and the allegations herein, but denied the Plaintiffs' request to change the Township's policy and designate the Greenhouse as an agricultural use and entitlement to a CO equivalent.

**ANSWER: The allegations of paragraph 202 are denied as untrue.**

203.    The Township, through its final decision-makers and policymakers, has engaged in a policy, practice, and pattern of violating Plaintiffs' constitutional rights.

**ANSWER: The allegations of paragraph 203 are denied as untrue.**

PLAINTIFFS HAVE AND WILL CONTINUE TO SUFFER DAMAGES

204.    Plaintiffs purchased the Property and expended significant time, money, and resources on state and local approvals, including a Class C Grower License, Conditional Use Permit, and Site Plan approval.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 204.**

205.    Plaintiffs purchased the Property with the reasonable belief that it would be an agricultural use, not requiring a building permit, because (a) the Property is in an Agricultural Zone, (b) the Property and the Greenhouse/Nursery were designated agricultural uses under the prior owners, (c) the Township made statements and attestations suggesting the opposite, and (d) the Township's Ordinance, Section 17B supports marihuana cultivation.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 205.**

206.    Because of the Township, its policy, and their unnecessary, unjustified, arbitrary, and unexpected delays, Plaintiffs have suffered significant damages, including delays by being

forced to start growing plants later in the season.  Delaying planting means the most important part of their growth will happen after the summer solstice, when the days are shorter. Less sun means less flower output. *Ex. 8, Rosman.*

**ANSWER: The allegations of paragraph 206 are denied as untrue.**

207.    The Greenhouse does not have grow-lights, except for a small section of starting plants, and therefore every day that passes results in a drastic reduction in plant growth and profitability.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 207.**

208.    Plaintiffs' projections indicate that for each week of delayed plant growth, the crop yields will decrease by $528,000 per week to start, and rise to $1,584,000 in losses each week by the end of the 2022 season. *Ex. 8, Rosman.*

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 208.**

209.    If the Township's decision mandating a CO and building permits is left standing, Plaintiffs will be forced to incur significant costs in order to demolish the Greenhouse/Nursery and build an entirely new structure.  It is not feasible to adapt the greenhouse into the type of structure that would be subject to a CO.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 209.**

210.    Plaintiffs have not begun their marihuana cultivation operation because of the Township's outright denials. Plaintiffs' marihuana cultivation operation has, and will continue, to lose revenue and suffer from the Township's constitutional violations.

**ANSWER: The allegations of paragraph 210 are denied as untrue.**

211.    While Plaintiffs remain idle due to the Township's arbitrary and unjustified decisions, Plaintiffs must still pay rent payments to POWER REIT, their landlord.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' rent. The remaining allegations of paragraph 211 are denied as untrue.**

212.    Plaintiffs, as tenant-operators of the Property, must pay $644,444 per month in rent payments, despite the inability to generate revenue directly as a result of the extraordinary lengths the Township has taken to derail efforts to put the Greenhouse back into operation. *Ex. 8, Rosman.*

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' rent. The remaining allegations of paragraph 212 are denied as untrue.**

213.    Because Plaintiffs cannot obtain a CO or building permits, the Township's arbitrary and unjustified decisions and policy will wholly prevent cannabis cultivation and require non-cannabis plant cultivation, which will be uneconomical.  The Greenhouse will fail, as it did for Kilbourn Farms, the former owner and operator of the Greenhouse.

**ANSWER: The allegations of paragraph 213 are denied as untrue.**

214.    Plaintiffs will suffer projected losses at this time of $7,613,334 for 2022 alone.

**ANSWER: The allegations of paragraph 214 are denied as untrue.**

**COUNT I**
**WRIT OF MANDAMUS**

215.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully restated herein.

**ANSWER: The Township's answers to paragraphs 1-214 inclusive are repeated verbatim.**

216. Plaintiffs have a clear, legal right under the Township's ordinances, state and federal law, and the United States and Michigan Constitutions, and Michigan Regulation 420.9, to a CO equivalent.

**ANSWER: The allegations of paragraph 216 are denied as untrue.**

217. The Property is an agricultural use where (a) the Property is in an Agricultural Zone, (b) the Property and the Greenhouse were treated and afforded an agricultural use by the Township which has not changed and is thus "grandfathered", (c) the Township's representations, and (d) the Township's Ordinance, Section 17B requires that the Property be developed as an Agricultural use.

**ANSWER: The allegations of paragraph 216 are denied as untrue.**

218. The Township, through its Township Board, Township Building and Zoning Officials, Township Planning Commission, and Township Clerk, represented and attested that Plaintiffs had complied with all local regulations and ordinances, and received final local approval.

**ANSWER: The Township specifically admits, only, that Plaintiffs have received every permit for which they have applied. The remaining allegations of paragraph 218 are denied as untrue.**

219. On or about January 21, 2022, Ms. VanSickle attested that Plaintiffs' "proposed establishment is in compliance with all regulations and ordinances within the municipality, including zoning ordinances."

**ANSWER: The best evidence as to the contents of the attestations are the attestations themselves. The Township does not accept and reserves the right to challenge any interpretation of the attestations by Plaintiffs.**

220.     The Township has a clear legal duty to issue a CO equivalent through its ordinances, the State Construction Code exempting agricultural buildings, representations, attestations, and Michigan Reg. 420.9, which hold that the Greenhouse is an agricultural use and which require a CO equivalent when a CO is not available.

**ANSWER: The allegations of paragraph 220 are denied as untrue.**

221.     Through the Township's ordinances, representations, and its attestation on January 21, 2022, the issuance of a CO equivalent letter is ministerial and not discretionary.

**ANSWER: The allegations of paragraph 221 are denied as untrue.**

222.     Plaintiffs request a writ of mandamus.

**ANSWER: No answer is required as paragraph 222 recites conclusions of law, not statements of fact.  To the extent that an answer is required, the Township denies that Plaintiffs are entitled to a writ of mandamus.**

223.     The Township should be required to issue a CO equivalent and affirm that the property is exempt from a CO.

**ANSWER: No answer is required as paragraph 223 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 223 are denied as untrue.**

224.     Without the issuance of a writ of mandamus, Plaintiffs will suffer harm as further stated herein.

**ANSWER: The allegations of paragraph 224 are denied as untrue.**

225.     Upon information and belief, the above relief is the adequate legal and/or equitable remedy.

**ANSWER: The allegations of paragraph 225 are denied as untrue as Plaintiffs have not utilized, let alone exhausted, applicable administrative remedies which include appealing the Construction Board of Appeals.**

**COUNT II**
**EQUITABLE AND PROMISSORY ESTOPPEL**

226.     Plaintiffs repeat and reallege each of the foregoing allegations as if fully restated herein.

**ANSWER: The Township's answers to paragraphs 1 through 225 inclusive are repeated verbatim.**

227.     Equitable and Promissory estoppel are an appropriate remedy where a municipality's misrepresentations are intentional, negligent, or even a mistake.

**ANSWER: No answer is required as paragraph 227 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 227 are denied as untrue.**

228.     The Township should be estopped from preventing final approvals of the Greenhouse and should be required to issue a CO equivalent letter.

**ANSWER: No answer is required as paragraph 228 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 228 are denied as untrue.**

229.     The Township should be required to designate the Property and its Greenhouse/Nursery as an agricultural use.

**ANSWER: No answer is required as paragraph 229 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 229 are denied as untrue.**

230.    The Township intentionally and/or negligently induced Plaintiffs to believe, through representations, admissions, and/or silence of its officials, including but not limited to the Township Board, Building and Zoning Officials, Township Planning Commission, and Township Clerk, that the Property and its Greenhouse were an agricultural use and did not require additional structural changes, building permits, and was "ready to go."

**ANSWER: The allegations of paragraph 230 are denied as untrue.**

231.    Furthermore, on or about January 21, 2022, Ms. VanSickle attested that Plaintiffs' "proposed establishment is in compliance with all regulations and ordinances within the municipality, including zoning ordinances."

**ANSWER: The best evidence of the attestations referenced in this paragraph are the attestations themselves. The Township does not accept and reserves the right to challenge any interpretation of the attestations by Plaintiffs.**

232.    The Township's representations that the Property and its Greenhouse/Nursery were agricultural uses were in conformity with (a) the Property being located in an Agricultural Zone, (b) the Property and the Greenhouse/Nursery were designated agricultural uses under the prior owners, and (c) the Township's Ordinance, Section 17B.

**ANSWER: The allegations of paragraph 232 are denied as untrue.**

233.    Plaintiffs reasonably relied on these representations by:

    A.  Purchasing the Property;
    B.  Investing monies into the marihuana cultivation operation in the Greenhouse/Nursery;
    C.  Paying for the Class C Grower License;
    D.  Expending monies, time, and resources hiring professionals and engineers, in order to acquire local approvals such as the Site Plan Approval and Conditional Use Permit;

**ANSWER: The allegations of paragraph 233 are denied as untrue.**

234.   Plaintiffs have been greatly prejudiced because of these false and misleading misrepresentations.

**ANSWER: The allegations of paragraph 234 are denied as untrue.**

235.   Plaintiffs have incurred significant damages and its marihuana cultivation operation remains idle.

**ANSWER: The allegations of paragraph 235 are denied as untrue.**

236.   As a direct and proximate result of the Township's actions, Plaintiffs have suffered and will continue to suffer financial losses, lost profits, and a loss of their constitutionally-protected rights.

**ANSWER: The allegations of paragraph 236 are denied as untrue.**

**COUNT III**
**VIOLATION OF THE UNITED STATES AND MICHIGAN CONSTITUTIONS:**
**EQUAL PROTECTION (28 U.S.C. § 1983)**

237.   Plaintiffs repeat and reallege each of the foregoing allegations as if fully restated herein.

**ANSWER: The Township's answers to paragraphs 1-236 inclusive at repeated verbatim.**

238.   Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

**ANSWER: No answer is required as paragraph 238 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the U.S. Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Constitution by Plaintiffs.**

239.     The Michigan Constitution provides that "All political power is inherent in the people. Government is instituted for their equal benefit, security and protection." Mich. Const. 1963, art. 1, § 1.

**ANSWER: No answer is required as paragraph 239 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Constitution by Plaintiffs.**

240.     It further guarantees that "No person shall be denied the equal protection of the laws. . . ." Mich. Const. 1963, art. 1, § 2.

**ANSWER: No answer is required as paragraph 240 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Constitution by Plaintiffs.**

241.     The equal protection clauses under the U.S. and Michigan Constitutions guarantee the right to equal treatment from the government and prohibit laws and the application of laws that invidiously discriminate between similarly situated individuals.

**ANSWER: No answer is required as paragraph 241 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 241 are denied as untrue.**

242.     Plaintiffs are similarly situated to the Property's prior owner, KP, where: both businesses owned the Property at one time; the Property was and is located within an agricultural zone; the Greenhouse/Nursery is located in the Property; and both businesses cultivate plants.

**ANSWER: The allegations of paragraph 242 are denied as untrue.**

243.    The Township and its Officials treated Plaintiffs differently than KP as further explained above.

**ANSWER: The allegations of paragraph 243 are denied as untrue.**

244.    All acts alleged herein of the Township, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, have been and are continuing to be done under the color and presence of law.

**ANSWER: The allegations of paragraph 244 are denied as untrue.**

245.    The Township and its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Building and Zoning Officials, have failed to fulfill their duties to Plaintiffs and have engaged in a policy, practice, and pattern of violating Plaintiffs' rights to equal protection under the U.S. and Michigan Constitutions, by changing the Property and Greenhouse's use designation, and selectively enforcing different requirements against Plaintiffs but not enforcing the same requirements against similarly situated businesses.

**ANSWER: The allegations of paragraph 245 are denied as untrue.**

246.    The only difference between the two businesses is that Plaintiffs intend to grow cannabis plants, while KP cultivated pepper plants. No changes exist other than a different plant is being grown.

**ANSWER: The allegations of paragraph 246 are denied as untrue.**

247.    The Township's unequal treatment of Plaintiffs violates the equal protection clauses of the U.S. Constitution and the Michigan Constitution.

**ANSWER: The allegations of paragraph 247 are denied as untrue.**

248.    The Township deprived Plaintiffs of their rights to equal treatment by requiring them to meet different requirements and building codes than other businesses that are similarly situated.

**ANSWER: The allegations of paragraph 248 are denied as untrue.**

249.    The Township treated Plaintiffs differently than similarly situated business by designating the Property only under Plaintiffs as an industrial use, which required different building permits and a CO, while the Township designated the Property under similarly situated businesses as an agricultural use, exempting it from the State Construction Code, MBC, building permits, and a CO.

**ANSWER: The allegations of paragraph 249 are denied as untrue.**

250.    The similarly situated businesses were not prosecuted when they did not obtain building permits or a CO.

**ANSWER: The allegations of paragraph 250 are denied as untrue in the form stated.**

251.    The Township's unequal treatment is an unreasonable and arbitrary restriction on the use of land.

**ANSWER: The allegations of paragraph 251 are denied as untrue.**

252.    The Township's unequal treatment does not bear any real nor substantial relation to public health, safety and welfare.

**ANSWER: The allegations of paragraph 252 are denied as untrue.**

253.    The Township's unequal treatment does not advance governmental interest and it is acting in bad faith.

**ANSWER: The allegations of paragraph 253 are denied as untrue.**

254.    The Township's unequal treatment unreasonably regulates Plaintiffs differently than similarly situated businesses.

**ANSWER: The allegations of paragraph 254 are denied as untrue.**

255.    The Township has caused injury to the Plaintiff.

**ANSWER: The allegations of paragraph 255 are denied as untrue.**

256.    As a direct and proximate result of the Township's unequal treatment of Plaintiffs, Plaintiffs have suffered and will continue to suffer a loss of its constitutionally protected rights.

**ANSWER: The allegations of paragraph 256 are denied as untrue.**

257.    As a direct result of the Township's violation of Plaintiffs' rights of equal protection, Plaintiffs are suffering irreparable harm for which there is no adequate remedy of law.

**ANSWER: The allegations of paragraph 257 are denied as untrue.**

258.    As a direct result of the Township's violation of Plaintiffs' rights of equal protection, Plaintiffs have suffered and are entitled to recover compensatory and nominal damages, costs and attorney fees.

**ANSWER: The allegations of paragraph 258 are denied as untrue.**

## COUNT IV
## VIOLATION OF THE UNITED STATES AND MICHIGAN CONSTITUTIONS: SUBSTANTIVE AND PROCEDURAL DUE PROCESS (28 U.S.C. § 1983)

259.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully restated herein.

**ANSWER: The Township's answers to paragraph 1 through 258 inclusive are repeated verbatim.**

260.    Amendment XIV of the United States Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

**ANSWER: No answer is required as paragraph 260 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the U.S. Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Constitution by Plaintiffs.**

261.    The Due Process Clause of the Michigan Constitution provides that "[n]o person shall ... be deprived of life, liberty or property, without due process of law." Const. 1963, art. 1, § 17.

**ANSWER: No answer is required as paragraph 261 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Constitution by Plaintiffs.**

262.    All acts alleged herein of the Township, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials, have been and are continuing to be done under the color and presence of law.

**ANSWER: The allegations of paragraph 262 are denied as untrue.**

263.    The Township and its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, and Township Building and Zoning Officials, have failed to fulfill their duties to Plaintiffs and have engaged in a policy, practice, and pattern of violating Plaintiffs' rights to procedural and substantive due process under the U.S. and Michigan Constitutions by depriving Plaintiffs' of their vested property rights without due process.

**ANSWER: The allegations of paragraph 263 are denied as untrue.**

264.    The Township's policy, practice, and pattern is unreasonable, arbitrary, and capricious, such that it shocks the conscious.

**ANSWER: The allegations of paragraph 264 are denied as untrue.**

265.    Under the Due Process Clause of the U.S. Constitution and the Michigan Constitution, Plaintiffs have a liberty interest in their use of the Property, the use of the Greenhouse/Nursery, their local approvals, and their Class C Grower License.

**ANSWER: No answer is required as paragraph 265 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Constitutions speak for themselves. The Township does not accept and reserves the right to challenge any interpretations of the Constitutions by Plaintiffs.**

266.    The right derived to Plaintiffs under the Property, the use of the Greenhouse/Nursery, their local approvals, and their Class C Grower License, are property rights under the U.S. and Michigan Constitutions.

**ANSWER: No answer is required as paragraph 266 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 266 are denied as untrue.**

267.    The Township's arbitrary and unreasonable policy has deprived Plaintiffs of their vested property rights in violation of the U.S. and Michigan Constitution's guarantees of due process.

**ANSWER: The allegations of paragraph 267 are denied as untrue.**

268.    Plaintiffs had a reasonable expectation that the Property and its Greenhouse/Nursery would be an agricultural use, based on (a) the Property is in an Agricultural

Zone, (b) the Property and the Greenhouse/Nursery were treated and afforded an agricultural use by the Township which has not changed and is thus "grandfathered", (c) the Township's representations, and (d) the Township's Ordinance, Section 17B requires that the Property be developed as an Agricultural use.

**ANSWER: The allegations of paragraph 268 are denied as untrue.**

269.    Furthermore, Plaintiffs had a reasonable expectation in the use of the Property as an agricultural use because the Township intentionally induced Plaintiffs to believe, through representations, admissions, and/or silence of its Officials, including but not limited to the Township Board, Township Supervisor, Township Planning Commission, Township Building and Zoning Officials, and Township Clerk, that the Property and its Greenhouse/Nursery would be an agricultural use and did not require additional structural changes, building permits, and was "ready to go."

**ANSWER: The allegations of paragraph 269 are denied as untrue.**

270.    Furthermore, on or about January 21, 2022, Ms. VanSickle attested that Plaintiffs' "proposed establishment is in compliance with all regulations and ordinances within the municipality, including zoning ordinances."

**ANSWER: The best evidence of the contents of the attestations are the attestations themselves. The Township does not accept and reserves the right to challenge any interpretation of the attestations by Plaintiffs.**

271.    The Township changed the Property and the Greenhouse's use designation from an agricultural to an industrial use, and subsequently required additional structural changes, building permits, and a CO.

**ANSWER: The allegations of paragraph 271 are denied as untrue.**

272. Plaintiffs did not receive notice of the Township's change in the Property's land use designation, changing the Property from an agricultural to an industrial use, until after they purchased the Property.

**ANSWER: The allegations of paragraph 272 are denied as untrue.**

273. Plaintiffs did not receive notice of Township's change in the Property's use until after they invested money, time, and resources in receiving local approvals and a Class C Grower License.

**ANSWER: The allegations of paragraph 273 are denied as untrue.**

274. Plaintiffs did not have the opportunity to challenge the Township's decisions depriving Plaintiffs of their property rights.

**ANSWER: The allegations of paragraph 274 are denied as untrue. Answering further, the Township states that the Michigan Building Code vests the Construction Board of Appeals with jurisdiction to hear an appeal that "the provisions of the code do not apply . . . ." Michigan Building code, Section 113.1. Plaintiffs have refused to utilize this available administrative remedy to seek a determination regarding the applicability of the Michigan Building Code.**

275. The Township's policy, pattern, and practice has deprived Plaintiffs of their vested property rights.

**ANSWER: The allegations of paragraph 275 are denied as untrue.**

276. Further, the Township's policy, pattern, and practice forces Plaintiffs to proceed through administrative procedures that they are exempt from such that there is no available opportunity to challenge Township's decisions depriving Plaintiffs of their property rights.

**ANSWER: The allegations of paragraph 276 are denied as untrue.**

277.   After multiple attempts, the Township has not provided any opportunity to resolve this matter.

**ANSWER: The allegations of paragraph 277 are denied as untrue.**

278.   The Township restricts the Property to uses for which it was not intended.

**ANSWER: The allegations of paragraph 278 are denied as untrue.**

279.   The Township's deprivation of Plaintiffs' property rights is not related to a legitimate government interest.

**ANSWER: The allegations of paragraph 279 are denied as untrue.**

280.   To the extent that the Township's actions do advance a legitimate local purpose, this interest could be adequately served by reasonable alternatives.

**ANSWER: The allegations of paragraph 280 are denied as untrue.**

281.   As a direct and proximate result of the Township's actions, Plaintiffs have suffered and will continue to suffer a loss of its constitutionally protected rights.

**ANSWER: The allegations of paragraph 281 are denied as untrue.**

282.   As a direct result of the Township's violation of Plaintiffs' rights of due process, Plaintiffs are suffering irreparable harm for which there is no adequate remedy of law.

**ANSWER: The allegations of paragraph 282 are denied as untrue.**

283.   As a direct result of the Township's violation of Plaintiffs' rights of due process, Plaintiffs have suffered and are entitled to recover compensatory and nominal damages, costs and attorney fees.

**ANSWER: The allegations of paragraph 283 are denied as untrue.**

## COUNT V
## VIOLATION OF THE UNITED STATES AND MICHIGAN CONSTITUTIONS: TAKINGS CLAUSE VIOLATION (28 U.S.C. § 1983)

284.    Plaintiffs repeats and reallege each of the foregoing allegations as if fully restated herein.

**ANSWER: The Township's answers to paragraphs 1 through 283 inclusive are repeated verbatim.**

285.    The Takings Clause of the Fifth Amendment of the United States Constitution provides that "[N]or shall private property be taken for public use, without just compensation." U.S. Cons., Amdt. V.

**ANSWER: No answer is required as paragraph 285 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the U.S. Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Constitution by Plaintiffs.**

286.    The Fifth Amendment is applicable to local governments such as the Township through the Fourteenth Amendment.

**ANSWER: No answer is required as paragraph 286 recites conclusions of law, not statements of fact. To the extent that an answer is require, the allegations of paragraph 286 are admitted.**

287.    The Takings Clause of the Michigan Constitution provides that "[N]or shall private property be taken for public use, without just compensation." Const. 1963, art. 1, § 17.

**ANSWER: No answer is required as paragraph 287 recites conclusions of law, not statements of fact. To the extent that an answer is required, the Township states that the Michigan Constitution speaks for itself. The Township does not accept and reserves the right to challenge any interpretation of the Michigan Constitution by Plaintiffs.**

288.    The Township's land use designation changing the Property and Greenhouse from an agricultural use to an industrial use constitutes a regulatory taking under the Takings Clauses of the U.S. and Michigan Constitutions.

**ANSWER: The allegations of paragraph 288 are denied as untrue.**

289.    The Township's land use designation deprives Plaintiffs of the economically beneficial use of the Property leaving the land economically idle.

**ANSWER: The allegations of paragraph 289 are denied as untrue.**

290.    Courts find Takings Clause violations by reviewing the following factors: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.

**ANSWER: No answer is required as paragraph 287 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 290 are denied as untrue.**

291.    Plaintiffs have been detrimentally impacted by the economic impact of the Township's regulation on Plaintiffs.

**ANSWER: The allegations of paragraph 291 are denied as untrue.**

292.    Plaintiffs cannot utilize the Property and Greenhouse because of the Township's regulation and it remains idle.

**ANSWER: The allegations of paragraph 292 are denied as untrue.**

293.    Plaintiffs have suffered, and will continue to suffer, weekly losses of $528,000 per week that will escalate to $1,584,000 per week by the end of 2022; $644,444 in monthly rent

payments while the Greenhouse remains idle and not generating revenue; and total projected losses of $7,613,334 for 2022 alone.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 293. To whatever extent the allegations of this paragraph do or may suggest any wrongdoing on the part of the Township, they are denied as untrue.**

294.    Plaintiffs will suffer a severe diminution in the value of the Property where the Township's arbitrary and unjustified regulations will wholly prevent cannabis cultivation and require non-cannabis plant cultivation, which previously caused Kilbourn Farms to fail.

**ANSWER: The allegations of paragraph 294 denied as untrue.**

295.    Plaintiffs purchased the Property with the reasonable belief and investment-backed expectations that it would be an agricultural use permitting cannabis cultivation, not requiring a building permit or CO, because (a) the Property is in an Agricultural Zone, (b) the Property and the Greenhouse/Nursery were designated agricultural uses under the prior owners, (c) the Township made statements and attestations suggesting the opposite, and (d) the Township's Ordinance, Section 17B supports marihuana cultivation.

**ANSWER: The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 295.**

296.    The Township's regulation was done in bad faith, is unreasonable, and is not related to any legitimate governmental purpose.

**ANSWER: The allegations of paragraph 296 are denied as untrue.**

297.    The Township's regulation was made only after Plaintiffs purchased the Property, acquired local approvals, acquired a Class C Grower License, and expended time, money, and resources in excess of $100,000.

**ANSWER: The allegations of paragraph 297 are denied as untrue.**

298.    The Township's regulation is arbitrary and irrational where it treats Plaintiffs differently than similarly situated businesses in violation of Plaintiffs' rights to equal protection, as further stated herein.

**ANSWER: The allegations of paragraph 298 are denied as untrue.**

299.    The Township's regulation deprives Plaintiffs of their vested property rights in violation of Plaintiffs' substantive and procedural due process, as further stated herein.

**ANSWER: The allegations of paragraph 299 are denied as untrue.**

300.    As a direct and proximate result of the Township's actions, Plaintiffs have suffered and will continue to suffer a loss of its constitutionally protected rights.

**ANSWER: The allegations of paragraph 300 are denied as untrue.**

301.    As a direct result of the Township's violation of the Takings Clause of the U.S. and Michigan Constitutions, Plaintiffs are suffering irreparable harm for which there is no adequate remedy of law.

**ANSWER: The allegations of paragraph 301 are denied as untrue.**

302.    As a direct result of the Township's regulation constituting a taking, depriving Plaintiffs of their property rights, Plaintiffs have suffered and are entitled to recover compensatory and nominal damages, costs and attorney fees.

**ANSWER: The allegations of paragraph 302 are denied as untrue.**

<u>**COUNT VI**</u>
<u>**EXPEDITED DECLARATORY JUDGMENT (28 U.S.C. § 2201; 2202)**</u>

303.     Plaintiffs repeats and reallege each of the foregoing allegations as if fully restated herein.

**<u>ANSWER:</u> The Township's answers to paragraphs 1 through 302 inclusive are repeated verbatim.**

304.     Plaintiffs request an expedited declaratory judgment, trial, speedy decision, and advancement on this Court's calendar under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201,  2202.

**<u>ANSWER:</u> No answer is required as paragraph 304 recites conclusions of law, not statements of fact. To the extent that an answer is required, the federal rules of civil procedure speak for themselves.**

305.     Without such expedited relief, Plaintiffs will suffer immense and significant losses that may force them out of business by the conclusion of this case.

**<u>ANSWER:</u> The Township lacks information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 305.**

306.     The Property is agricultural because (a) the Property is in an Agricultural Zone, (b) since the construction of the Greenhouse/Nursery, it has never had a CO, building permits, received building violations and has been acknowledged by the Township as agricultural, which has not changed and is thus "grandfathered," (c) the Township's representations, (d) the Township's Ordinance, Section 17B requires that the Property be developed as an Agricultural use; and (e) changing the plant grown in the Greenhouse from peppers to cannabis does not change the use or occupancy.

**<u>ANSWER:</u> The allegations of paragraph 306 are denied as untrue.**

307.     Plaintiffs did not make significant structural changes to Greenhouse/Nursery.

**ANSWER: The allegations of paragraph 307 are denied as untrue.**

308.     The prior owner cultivated peppers and Plaintiffs wish to cultivate cannabis plants in the existing Greenhouse/Nursery.

**ANSWER: The Township specifically admits, only, that the prior owner cultivated peppers and Plaintiffs wish to cultivate marihuana in the building. The remaining allegations of paragraph 308 are denied as untrue.**

309.     However, the Township, through its officials, have taken the position that Plaintiffs changed the use of the Property and Greenhouse, requiring Plaintiffs to proceed through the administrative process and the CBA. This is legally and factually incorrect.

**ANSWER: The Township specifically admits, only, that the Construction Board of Appeals provides an administrative remedy to the Plaintiffs, which Plaintiffs have failed to utilize. The remaining allegations of paragraph 309 are denied.**

310.     Plaintiffs dispute that changing the plant from peppers to cannabis changes the use or occupancy of the Greenhouse, which remains a "grandfathered" agricultural property that is not subject to MBC, State Construction Code, does not require building permits or a CO, and is not subject to the jurisdiction of the CBA or State CBA.

**ANSWER: The Township lacks information and knowledge sufficient to form a belief as to the truth of the allegations of paragraph 310.**

311.     There is an actual dispute between the Parties, the result of the dispute causes Plaintiffs harm, and Plaintiffs cannot proceed to obtain final state approval with the MRA.

**ANSWER: The allegations of paragraph 311 are denied as untrue. The Township denies any wrongdoing or liability to the Plaintiffs whatsoever. Answering further, Plaintiffs' failure to**

comply with statutory requirements and exhaust the administrative remedies available to them is the sole cause of any harm suffered by Plaintiffs.

312.    An actual justiciable controversy exists such that declaratory judgment is required so that the parties can appropriately govern their conduct going forward.

**ANSWER: The allegations of paragraph 312 are denied as untrue. Answering further, the Township states that the Michigan Building Code vests the Construction Board of Appeals with jurisdiction to resolve the dispute between the Parties. See Michigan Building code, Section 113.1. Plaintiffs have refused to utilize this available administrative remedy to seek a determination as to the applicability of the Michigan Building Code.**

313.    A building permit is not required for this agricultural land use under the State Construction Code, MCL 125.1510(8), or MBC, since the Greenhouse does not meet the definition of "building" provided by the MBC.

**ANSWER: No answer is required as paragraph 313 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 313 are denied as untrue.**

314.    Since the Greenhouse is an agricultural, grandfathered use, there has been no change of use (substituting cannabis for peppers does not change the use of the Greenhouse), the Greenhouse was and remains exempt from the MBC, was not required to apply for and/or obtain permits and is exempt from and/or not required to submit to the jurisdiction of the CBA, which would accordingly be futile.

**ANSWER: No answer is required as paragraph 314 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 314 are denied as untrue.**

315.    The Township's false representations, deprivation of Plaintiffs' property, and unequal treatment of Plaintiff, will cause irreparable injury.

**ANSWER: The allegations of paragraph 315 are denied as untrue.**

316.    Plaintiffs cannot operate their marihuana cultivation operation without a CO equivalent.

**ANSWER: The allegations of paragraph 316 are denied as untrue.**

317.    As a direct result of the violations stated within this Complaint, Plaintiffs are suffering irreparable harm for which there is no adequate remedy of law.

**ANSWER: The allegations of paragraph 317 are denied as untrue.**

318.    Plaintiffs will suffer losses of $1,584,000 per week by the end of 2022.

**ANSWER: The allegations of paragraph 318 are denied as untrue.**

319.    The Township will not suffer damages, because they stand to gain annual fees in excess of $100,000, Plaintiffs' job creation will increase employment within the community with approximately 100 full-time jobs, and additional tax benefits. *Ex. 8, Rosman*.

**ANSWER: The allegations of paragraph 319 are denied as untrue.**

320.    Plaintiffs request a declaratory judgment entitling them to issuance of the Township's CO equivalent.

**ANSWER: The Township denies that Plaintiffs are entitled to a declaratory judgment and requests that this Court dismiss the Complaint with prejudice.**

321.    Plaintiffs' request for expedited declaratory judgment is severable from the above claims and can be decided on an expedited basis.

**ANSWER: No answer is required as paragraph 321 recites conclusions of law, not statements of fact. To the extent that an answer is required, the allegations of paragraph 321 are denied as untrue.**

322.    A judgment in favor of Plaintiffs declaring that the Greenhouse is a "grandfathered," agricultural use/occupancy that this exempt from the MBC, does not require building permits and/or a CO and accordingly is not subject to the jurisdiction of the CBA, rendering any appeal thereto futile, is appropriate.

**ANSWER: The allegations of paragraph 322 are denied as untrue.**

WHEREFORE, Defendant Marengo Township seeks a verdict and judgment of no cause of action, and Defendant seeks its costs and attorney fees as allowed by law.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.          *Fahey Schultz Burzych Rhodes PLC*
Attorneys for Defendant                       Attorneys for Defendant


/s/Daniel S. Zick (P77950)                    /s/Matthew A. Kuschel (P76679)
Thomas R. Meagher (P32959)                    Matthew A. Kuschel (P76679)
Daniel S. Zick (P77950)                       Shaina R. Reed (P74740)
313 S. Washington Square                      Christopher S. Patterson (P74350)
Lansing, MI 48933                             4151 Okemos Road
(517) 371-8100                                Okemos, MI 48864
temeagher@fosterswift.com                     mkuschel@fsbrlaw.com
dzick@fosterswift.com                         sreed@fsbrlaw.com
                                              cpatterson@fsbrlaw.com

Dated: June 6, 2022                           Dated: June 6, 2022

## **AFFIRMATIVE DEFENSES**

Plaintiffs will please take note that Defendant Marengo Township will rely upon the following affirmative defenses:

1.      Plaintiffs have failed to exhaust their administrative remedies or ripen their claims because they did not appeal the decision and interpretation of the Michigan Building Code to the local Construction Board of Appeals. See MCL 125.1516.

2.      Some or all of Plaintiffs' claims may be barred by the doctrines of laches, unclean hands, or estoppel.

3.      Plaintiffs have failed to state a claim upon which relief may be granted.

4.      Some or all of Plaintiffs' claims are barred by the doctrine of immunity, including, but not limited to, governmental immunity granted by the provisions of the Michigan Governmental Tort Liability Act, MCL 691.1401, *et seq.*, and specifically, but not limited to MCL 691.1407, *et seq.*

5.      The Township performed a privileged and protected governmental function in approving the preliminary plat and enforcing its ordinances and exercising its legislative discretion.

6.      Plaintiffs have failed to plead in avoidance of governmental immunity on any claim or damage asserted against the Township.

7.      The Township is entitled to qualified immunity against Plaintiffs' claims pursuant to the common law and statutes of the State of Michigan and the United States of America.

8.      Plaintiffs' federal law claims fail to state claims upon which relief may be granted by this Court as they seek damages that are illegal under the Controlled Substances Act ("CSA"), 21 U.S.C. § 812, *et seq.*

9.      This Court should decline supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 3167(c).

10.      This Court should abstain from exercising jurisdiction over Plaintiffs' Complaint under the *Burford* Abstention Doctrine. *New Orleans Public Service, Inc. v Council of City of New Orleans*, 491 U.S. 350, 361 (1989).

11.      Some or all of Plaintiffs' claims are or may be barred because they are not ripe for review and Plaintiffs have not satisfied the rule of finality.

12.      Plaintiffs have failed to state any legally recognized property right under the Constitutions of the United States of America and the State of Michigan.

13.      Plaintiffs have no property interest in any permit or approval of the Township and lack any property interest that could be the subject of their claim of unconstitutional taking by the Township.

14.      Plaintiffs lack any reasonable investment backed expectation in permits or licenses for the Property that can support a claim for unconstitutional taking by the Township.

15.      Plaintiffs lack any vested right or entitlement to a certificate of occupancy ("CO") or its equivalent.

16.      Plaintiffs have failed to mitigate their alleged damages.

17.      The Township acted at all times in the reasonable belief that its actions were lawful, objectively reasonable, and within the bounds of applicable law.

18.      No action or decision by the Township was a proximate cause of any claimed injury or damage to Plaintiffs, which arises out of the preexisting construction and nature of the Greenhouse, Plaintiffs' own decision to cultivate cannabis, and Plaintiffs' refusal to utilize the

administrative processes for establishing a marihuana cultivation operation set forth under Michigan law

19.     Any alleged injury suffered by Plaintiffs was due to and caused by Plaintiffs' own failure to engage in appropriate conduct and due diligence under the circumstances. Plaintiffs' own conduct, including but not limited to its purchase of the Property after several other cannabis companies were unable to close were self-imposed and self-created.

20.     Plaintiffs have no entitlement to damages under one or more of their claims.

21.     The Township reserves the right to identify such other and additional affirmative defenses as may come to light during discovery proceedings.


Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.          *Fahey Schultz Burzych Rhodes PLC*
Attorneys for Defendant                       Attorneys for Defendant


/s/Daniel S. Zick (P77950)                     /s/Matthew A. Kuschel (P76679)
Thomas R. Meagher (P32959)                    Matthew A. Kuschel (P76679)
Daniel S. Zick (P77950)                       Shaina R. Reed (P74740)
313 S. Washington Square                      Christopher S. Patterson (P74350)
Lansing, MI 48933                             4151 Okemos Road
(517) 371-8100                                Okemos, MI 48864
temeagher@fosterswift.com                     mkuschel@fsbrlaw.com
dzick@fosterswift.com                         sreed@fsbrlaw.com
                                              cpatterson@fsbrlaw.com

Dated: June 6, 2022                           Dated: June 6, 2022

## RELIANCE ON DEMAND FOR TRIAL BY JURY

Defendant Marengo Township relies on Plaintiffs' Jury Demand on all issues (if any) that

may be so tried in this action.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.       *Fahey Schultz Burzych Rhodes PLC*
Attorneys for Defendant                               Attorneys for Defendant


 /s/Daniel S. Zick (P77950)                          /s/Matthew A. Kuschel (P76679)
Thomas R. Meagher (P32959)                 Matthew A. Kuschel (P76679)
Daniel S. Zick (P77950)                          Shaina R. Reed (P74740)
313 S. Washington Square                       Christopher S. Patterson (P74350)
Lansing, MI 48933                                 4151 Okemos Road
(517) 371-8100                                    Okemos, MI 48864
temeagher@fosterswift.com                     mkuschel@fsbrlaw.com
dzick@fosterswift.com                           sreed@fsbrlaw.com
                                                  cpatterson@fsbrlaw.com


Dated: June 6, 2022                               Dated: June 6, 2022


14107:00402:6383605-1

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2022, I arranged for service of the foregoing Defendant
Marengo Township's Answer to Complaint and Petition for Writ of Mandamus, Affirmative
Defenses, and Reliance on Demand for Trial by Jury on all parties of record. Service was made
through CM/ECF.

 /s/Daniel S. Zick (P77950)
Daniel S. Zick